331 So.2d 571 (1976)
Ivy J. THIBODEAUX et ux.
v.
Albert J. SALASSI et al.
No. 10692.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
Rehearing Denied May 24, 1976.
*572 Edward James Gaidry, Thibodaux, for appellants.
James C. Walker, Jr., Houma, for appellees.
Before SARTAIN, EDWARDS and PONDER, JJ.
EDWARDS, Judge.
Plaintiffs filed suit to have the boundary between their and defendants' properties judicially established. After trial on the merits, judgment was rendered in favor of plaintiffs. On application of defendants, a new trial was granted for the purpose of argument only.
*573 After consideration thereof, the trial court set aside the original judgment and rendered judgment in favor of defendants. From that judgment plaintiffs now appeal.
Plaintiffs are owners of a tract of land in Terrebonne Parish. The pertinent acts of sale by which the plaintiffs acquired this tract contain the following property descriptions:
A tract of land, comprised in Sections 56, 57, 85, 86, and 89, T-16-S, R-17-E, measuring a front of three-fourth (3/4) arpent, more or less, on the Bayou Coteau Public Road by full depth to a line drawn parallel to Bayou Terrebonne at thirty arpents therefrom (commonly known as the Thirty Arpent Line), the upper and lower lines of said tract being parallel to a certain ten foot canal or ditch located below said tract and commonly known as the Pelia Ditch, the lower line of said tract being at one and one-half arpents from the center of said Pelia Ditch and parallel thereto; bounded above by property allotted to Gillis LeBoeuf and others, below by property of Delien Kraemer, in the rear by property of Dupont Realty Co. and/or Irene Wallace or assigns, and in front by the Bayou Coteau Public Road; together with all buildings and improvements thereon. (Emphasis supplied)
A tract of land, comprised in Sections 56, 57, 85, 86, and 89, T-16-S, R-17-E, measuring a front of three-fourths (3/4) arpent, more or less, on the Bayou Coteau Public Road by full depth to a line drawn parallel to Bayou Terrebonne at thirty arpents therefrom (commonly known as the Thirty Arpent Line), the upper and lower lines of said tract being parallel to a certain ten foot canal or ditch located below said tract and commonly known as the Pelia Ditch, the lower line of said tract being two and one-half arpents from the center of said Pelia Ditch and parallel thereto; bounded above by property of Dauvellien LeBoeuf, below by property allotted to Carmelite Kraemer LeBoeuf Countiss, in the rear by property of Dupont Realty Co. and/or Irene Wallace or assigns, and in front by the Bayou Coteau Public Road; together will all buildings and improvements thereon. (Emphasis supplied)
These tracts were acquired from the heirs of Aubin LeBoeuf, vendee of the late Senator Allen Ellender. That transaction from Ellender to LeBoeuf contained the following description:
A certain tract of land situated in the Parish of Terrebonne, La., at a distance of about three miles from the City of Houma, measuring a front of one and one-half arpent (1½) on the northern boundary line of the property of vendor, or on the proposed public road leading from the Houma-Raceland Road westerly along the Bayou Coteau, by full depth to a line drawn parallel to Bayou Terrebonne at thirty (30) arpents therefrom being about twenty-seven to thirty arpents more or less; the upper and lower lines of said tract herein sold being parallel to a certain ten foot canal or ditch located below said tract and commonly known as the Pelia Ditch, the lower line of said tract being at one and one-half arpent from the center of said Pelia Ditch and parallel thereto; bounded above or west by property of Dauvelian LeBoeuf, below or east by other property of vendor and in front or north by property of Dr. Thos. Stork or assigns. (Emphasis supplied)
Defendants are owners of lots in Tall Timbers Subdivision. This subdivision was carved from the estate of Dauvelian LeBoeuf, who likewise acquired his property from Senator Ellender, described in that act of sale to Dauvelian LeBoeuf as follows:
A certain tract of land situated in the Parish of Terrebonne, La., at a distance of about 3 miles from the City of Houma, measuring two arpents front on the proposed public road, leading from the Houma-Raceland road westerly, along *574 said Bayou Coteau, by depth to a line drawn parallel to Bayou Terrebonne, at thirty arpents therefrom, being twenty five arpents, more or less, the upper and lower lines of said tract being parallel to a certain ten foot ditch or canal located below said tract and commonly known as the Pelia Ditch or canal; the lower line of the tract herein conveyed begins at three arpents from the center of said Pelia ditch or canal; bounded above and below by other lands of vendor. (Emphasis supplied)
Senator Ellender was thus the common ancestor in title of plaintiffs and defendants. The acquisition, from a Mr. Lirette, of the original 8 arpent tract by Senator Ellender describes that tract as follows:
A certain tract of land, situated in the Parish of Terrebonne, La. back of and adjoining the thirty arpent line separating it from the front lands of the vendor herein and Nicholas Lirette; said tract containing a superficial area of about one hundred and seventy acres more or less, and bounded as follows, to-wit: in front by said thirty arpent line, above by the rear lands of Nicholas J. Lirette, in the rear or north by the rear lands fronting on the Bayou Blue, and below by what is known as the Bocage Line, running in the Center of what is known as the Pelia Ditch, running N 66 degrees East; said tract having a width of eight arpents, more or less, between parallel lines, starting at the said Pelia Ditch, which runs N 66 degrees east. (Emphasis added)
It can be seen from the above and foregoing property descriptions that the northern and southern boundaries (generally east-west running lines) of all the tracts mentioned were set in the descriptions as lines parallel to and at certain distances (arpents) from the Pelia Ditch. It can be noted further that only in the acquisition by Senator Ellender from Lirette was a course bearing mentioned for the Pelia Ditch.
As the record reflects, the dispute herein narrows to a single issue: should the boundary in question be determined in reference to (or parallel to) a line having a course bearing of N 66 degrees E or in reference to the Pelia Ditch as it exists in fact? The problem arises because, although the Pelia Ditch for some 1900 feet back from the public road on Bayou Coteau does run on a bearing of N 66 E (actually the back azimuth thereof to the southwest), the ditch turns slightly upward to the northwest at a cross canal and continues on for another 1300 feet in that direction before it vanishes. Therefore, depending on how it is determined, the boundary in question either will be a straight line paralleling the N 66 E bearing, or will dogleg slightly to the right and upward at a point just past the cross canal, paralleling exactly the Pelia Ditch.
The subdivision lies above and contiguous to plaintiffs' tract. The boundary as set forth on the plat of Tall Timbers Subdivision was set in reference to the N 66 E bearing. Plaintiffs contend this causes parts of the southern lots to encroach on their land. The court-appointed surveyor made his proces verbal, which coincided with the boundary as set forth on the subdivision plat, and the trial court determined the boundary accordingly.
The plaintiffs maintain that the court-appointed surveyor failed to follow the guidelines of the Civil Code for the boundary action and that the trial court erred in determining the boundary according to his survey.
We agree.
The principles of law applicable to the boundary action are found in Title V of Book 2 of our Civil Code"Of Fixing The Limits, And Of Surveying Lands."
Included therein are the following articles relevant herein:
Art. 835. If the parties thus notified, their representatives or attorneys in fact, appear at the fixing [of] the limits, *575 the surveyor appointed for the purpose is bound to demand of them their respective title papers, which they are bound to deliver to him in good faith, if they have them in their possession, in order that the surveyor may determine, by examining them, in what place to fix the boundaries.
If the parties thus notified, or their representatives or attorneys in fact, refuse to deliver their title papers, the surveyor shall make mention of their refusal in his proces verbal, and of the causes they have alleged, if they have assigned any, for their refusal.
Art. 843. In matters of limits, reference must be had to ancient titles, unless it be proved that the bounds have been since changed, or that the land has been increased or diminished by changes caused by successions, by the will of the owner or by other events.
Art. 844. When an owner has alienated one of two estates, which belonged to him, and the ownership of any part of it is contested, the limits assigned to it by the vendor at the time of the sale, must be consulted. The limits anciently subsisting between the two estates, must not be regarded, because the designation, which the vendor makes of the metes and bounds, forms new limits between the two estates, or between the parts of them which he has sold.
Art. 845. The limits must be fixed according to the respective titles of the parties; in absence of title, on both sides, possession governs.
According to Article 835, the substantive starting point for the court-appointed surveyor is the titles of the respective parties.
Articles 843 and 844 are to be read together: the surveyor must refer to boundary descriptions as set out in earlier titles out of which have come the titles sub judice, except where, for various reasons, the boundaries have been since changed. Article 844 amplifies one instance where boundaries clearly may be changed; that is, where the owner re-sells one of two estates or parts of one estate. Where an owner sells a part of his estate, he necessarily must designate at least one new boundary, and possibly more. In such a case, reference must not be made to the previous boundaries which conflict with the new ones. The sale by the owner giving different boundaries destroys any right in subsequent purchasers to claim under ancient limits. Bourguignon v. Boudousquie, 6 Mart. (N.S.) 697 (La.1828).
Article 845 simply allows the surveyor to consider possession of the parties to establish the boundary, but only where no title exists.
We hold that the court-appointed surveyor violated the above stated principles in two respects. We quote from his proces verbal at page 7:
However, we believe, that when you consider the references in the titles, particularly the description in the sale from Lirette to Allen J. Ellender, which is the original of everyone's title in this 8 arpent area fronting on Bayou Coteau, where they reference the Pelia Ditch from Bayou Coteau as the lower line, and call for a straight line and bearing of N 66 E, and also considering the existing possession that extends at least 11 arpents up Bayou Coteau from this area in equation and about 2,830 feet more or less, west of Bayou Coteau; therefore, we have formed this as our survey and proces verbal, and state at this time that from the evidence we find, that this firm would set the boundary between the parties involved, as that of the existing Tall Timbers Subdivision, . . .
Initially, reference was made to the description in the sale from Lirette to Ellender, and in particular to the course bearing of N 66 E. This was error. Neither sale by Ellender to the two LeBoeufs mentions a course bearing, but references the boundaries solely to the Pelia Ditch. *576 There is in fact a difference between a continuous course bearing of N 66 E and the route of the Pelia Ditch. There is nothing in the record by which we might determine the intent of the late Senator other than the acts of sale themselves. We must assume that, by making reference to the Pelia Ditch and omitting the additional course bearing, he intended that ditch in fact to delineate the various northern and southern borders by reference thereto. Therefore, reference to and reliance on the course bearing by the court-appointed surveyor clearly was erroneous as a matter of law.
Secondarily, and as shown also by the quoted excerpt from the proces verbal, the surveyor considered possession (possession, we note, not only of the parties involved, but also of various other landowners in the general area) where title clearly existed. By the terms of Article 845, this also was error.
We note at this point that this court is not unaware of the fact that the Pelia Ditch disappears as a landmark before reaching the Thirty Arpent Canal, the back or western boundary to the properties in question. The extrapolation from that point to the back boundary is a matter within the sphere of civil engineering, and not of the Civil Law. But where, as we have previously noted, the Civil Law does speak, those legal principles must necessarily supercede the rules and procedures of other institutions and other professions, for our law forms the framework within which and because of which the various components of our society may operate harmoniously.
Lastly, defendants rely on the presumption that the court-appointed surveyor is correct in his recommendations. That presumption obtains only where the surveyor follows the applicable Codal provisions and employs jurisprudentially accepted surveying methods. Edmonston v. Badeaux, 242 So.2d 58 (La.App. 1st Cir. 1970); Sharpless v. Adkins, 16 So.2d 556 (La.App. 2nd Cir. 1943).
We now turn to the evidence adduced by plaintiffs. At the instance of plaintiffs, Robert Reed, Civil Engineer, made a survey to determine the boundary in question. His testimony at trial established that the procedures he employed were consistent with those noted supra.; that is, he determined the boundary by reference to the actual course of the Pelia Ditch rather than to the N 66 E course bearing. At that point where the Pelia Ditch ceased as a landmark, Reed testified that he then connected that point with a point on the back or western boundary marked by a railroad iron. The remainder of the boundary was then established parallel to and at the designated distance from this straight line extrapolation.
The railroad iron had been located in an earlier survey by Robert Wright, Civil Engineer. He testified that he had determined the iron, or rail, as marking the lower back or southwest corner of the August Kraemer property, which bounds the Thibodeaux property on the south. Wright stated that he was satisfied that the railroad iron had been set in a projection of the Pelia Ditch because (1) it was on line with the center of the ditch coming east from Bayou Terrebonne toward the 30 arpent canal and (2) the beginning of the 30 arpent canal coincided satisfactorily with the location of the railroad iron, indicating that the iron was considered the lower corner (since the 30 arpent canal was designated as the rear boundary in all titles out of Senator Ellender). Wright had likewise tracked the Pelia Ditch exactly to the point of disappearance to establish the boundary to that point from the Bayou Coteau Road.
The foregoing testimony establishes that Reed and Wright made their surveys in accordance with applicable codal provisions and reasonable surveying methods and procedures.
For the reasons assigned, the judgment of the trial court is reversed and set aside, and it is now ordered that the boundary herein be and it is hereby fixed *577 according to the map of survey by Robert Reed dated July 3, 1973 (plaintiffs' exhibit #4).
Costs of the proceedings in the trial court are to be borne equally by plaintiffs and defendants; costs of appeal are taxed against defendants.
REVERSED AND RENDERED.