JiDOUCET, Judge:
In this suit arising out of a boundary dispute, plaintiff, Aubrey Soileau, appeals a judgment of the trial court awarding the land in dispute to defendant, Onezime Matte, on the basis of thirty years acquisitive prescription. We affirm.

FACTS

The front portion of the disputed property lies along the boundary of Sections 37 and 38, Township 4 South, Range 4 East in St. Landry Parish. It begins just north of the section boundary, approximately two hundred (200) feet east of Louisiana Highway 182 and extends eastward approximately 1.1 mile. The rear portion extends eastward from the end of the front portion approximately 1,000 feet into Section 50 along and just north of a line which would be the continuation of the boundary between Sections 37 and 38.
]2The northern property, consisting of 450 acres in Sections 36, 37 and 50, was acquired by plaintiff, Aubrey Soileau, by means of a credit sale from the Alexander Beall heirs in August 1972.
Defendant, Onezime Matte, acquired full ownership of those portions of Sections 38 and 50 bordering the former Beall property and of importance in this suit through various sales and an act of partition beginning November 21, 1945, and ending January 17, 1948. The particular property of interest in this case is Lot 4 in Section 38 and Lot 8 in Section 50.
There is no doubt that a fence (referred to at trial as Fence #2) separated the Beall and Matte estates at the time Soileau acquired the property. Fence # 2 lies approximately 30 feet north of the section line at its western end and gradually approaches the section line as it traverses eastward. It is on the section line projection in Section 50 for approximately 1,050 feet at the eastern end of the parties’ properties.
It was also established that at one time there was another fence (Fence # 1) which had separated the two estates on the true boundary, the section line and its eastward projection. Mr. Matte testified that at the time of his acquisitions all that remained of Fence # 1 was a short segment on the western end of the disputed property in an area referred to as the hog pen. The fence served no purpose at the time and did not prevent cattle from entering or exiting the area in which it was strung.
The property south of Fence # 2 and north of the section boundary and its projection is that which is in dispute.
*619 Mr. and Mrs. Soileau both testified they walked the entire property before it was purchased. They indicated that they particularly liked the wooded area south of Fence #2 (the disputed area) which they claimed they thought was part of the Beall estate. However, they did not have the land surveyed before the sale, took Rno steps after the sale to tear down Fence #2, nor any steps to repair Fence # 1. In fact, Mr. Soileau testified that he, as had Mr. Beall, maintained Fence #2.
In 1980, some eight years after purchasing the land, the Soileaus hired Paul Fontenot, a registered surveyor, to survey the property. Mr. Fontenot found the southern boundary to be the dividing line between Sections 37 and 38 and its eastward projection into Section 50. This line was south of Fence # 2 for a majority of the Soileau-Matte boundary. Mr. Soileau testified that upon receiving the survey he presented Mr. Matte with a boundary agreement wherein each party acknowledged the true boundary of their respective property. Mr. Matte refused to sign any agreement.
Thereafter, no significant action was taken until this suit was filed in 1992. After suit was filed, the trial judge, in accordance with L.S.A.-C.C.P. article 3692, appointed a surveyor to prepare a plat of and surrounding the disputed area. This plat and the survey- or’s proces verbal were submitted to the court and filed into the record. The parties stipulated that the survey had been made in accordance with the prevailing standards of practice of the profession. Thus, the plat and proces verbal were presumed correct. Thibodeaux v. Salassi, 331 So.2d 571 (La. App. 1 Cir.), writ denied 337 So.2d 524 (La. 1976).
The surveyor found the section line and its eastward projection was the actual boundary between the two estates, just as recited in the parties’ respective deeds. Thus, unless Mr. Matte, the adverse possessor, could prove a different boundary established by thirty years acquisitive prescription, the court was constrained to fix the boundary according to the deeds of the parties. See L.S.A.-C.C. arts. 792 and 794; Honeycutt v. Bourg, 588 So.2d 1204 (La.App. 1 Cir.1991); and Owens v. Smith, 541 So.2d 950 (La.App. 2 Cir.1989).
| ¿ACQUISITIVE PRESCRIPTION: LAW AND DISCUSSION
The revised Louisiana Civil Code provisions dealing with Occupancy and Possession (Title XXIII of Book 3) and Acquisitive Prescription (Title XXIV of Book 3) were enacted by the legislature as Acts 1982, No. 187 and became effective January 1, 1983. The revisions did not change the law. Hence, in our discussion of whether or not the trial judge erred (as plaintiff-appellant claims) in finding Onezime Matte had gained ownership of the land in dispute via thirty years acquisitive prescription, we will refer to the new Civil Code articles.
Civil Code article 3486 provides as follows: Ownership and other real rights in immov-ables may be acquired by the prescription of thirty years without the need of just title or possession in good faith.
Additionally, Civil Code article 3424 provides:
To acquire possession one must intend to possess as owner and must take corporeal possession of the thing.
And finally, Civil Code article 3425 explains:
Corporeal possession is the exercise of physical acts of use, detention or enjoyment over a thing.
Also of importance in resolving the issue presented herein are C.C. articles 3431 and 3432 which provide respectively:
3431. Once acquired, possession is retained by the intent to possess as owner even if the possessor ceases to possess corporeally. This is civil possession, [and]
3432. The intent to retain possession is presumed unless there is clear proof of a contrary intention.
To prevail in a claim of ownership by thirty years acquisitive prescription the party making that claim must show continuous, uninterrupted, peaceable, public and unequivocal possession as the owner for a period of not less than thirty years. A.M.K.U. Trust v. Talley, 580 So.2d 1116 (La.App. 4 Cir.1991); Mistric v. Kurtz, 610 So.2d 226 (La. *620 App. 3 Cir.1992), writ denied, 612 So.2d 102 (La.1993).
|5The possession required to prevail in a claim of acquisitive prescription is the same as that required in a possessory action. In Plaisance v. Collins, 365 So.2d 608 (La.App. 1 Cir.1978), a possessory action, our brethren of the First Circuit explained thusly:
The possession required to bring a posses-sory action is considered as the same possession required to commence the running of acquisitive prescription. Norton v. Addie, 337 So.2d 432 (La.1976); Liner v. Louisiana Land and Exploration Company, supra [319 So.2d 766 (La.1975) ]. Thus, the Civil Code approach to “possession” is found in LSA-C.C. arts. 3426 and 3438 (Possession is the detention or enjoyment of a thing which a possessor exercises himself or through another person who exercises it in the possessor’s behalf); LSA-C.C. art. 3427 (The two different kinds of possession are natural and civil); LSA-C.C. arts. 3428 and 3430 (Natural possession is corporeal detention, such as occupying'a house or cultivating ground); LSA-C.C. arts. 3429 and 3431 (Civil possession is legal detention by virtue of title and with intent to possess as owner, such as ceasing to occupy a house or cultivate ground without intent to abandon the right of possession); and LSA-C.C. art. 3436 (Two distinct things are required in order to be able to acquire possession: intention of possessing as owner and corporeal detention of the thing). When possession is once acquired by corporeal detention, possession is preserved by the intention of possessing, although the possessor “may have ceased to have the thing in actual custody.” LSA-C.C. art. 3442. The intention of retaining possession is presumed to continue until a contrary intention is definitely shown. LSA-C.C. arts. 3443 and 3444. However, a possessor may lose possession “against his consent” if he is forcibly ejected or prevented from returning or allows his property to be usurped for a year without doing “any act of possession.” LSA-C.C. art. 3449. He may also lose possession by transferring or abandoning it. LSA-C.C. art. 3448.
Our Civil Code provisions make it clear that one who has acquired corporeal possession continues in possession until he transfers it or abandons it, or until another expels him from it, or until he allows the land to be usurped and held for a year without doing any act of possession or without interfering with the usurper’s possession. Liner v. Louisiana Land and Exploration Company, supra. Our Civil Code also clearly, points out that corporeal detention of each foot of land by one who claims under a title is unnecessary for a possessor to have corporeal possession of the land. LSA-C.C. art. 3437. It is sufficient for a possessor to enter upon and occupy a part of the land, if he has the intention of possessing all of the land within the boundaries; it is not necessary that he “pass over every part of it.” LSA-C.C. art. 3437.
The record establishes that Mr. Matte had over thirty years continuous possession, either corporeally or civilly, beginning no later than January 17, 1948. The area he claimed was separated from the Beall and then the Soileau estate by La fence (Fence #2) which was at least partially maintained by both Mr. Soileau and his ancestor in title, Mr. Beall. Mr. Matte also claimed to have, at least, helped in maintaining that boundary.
Mr. Matte farmed as close to the fence (Fence #2) as the tree line would allow, grazed cattle at least intermittently in the disputed area and, at one time, had a hog pen there. He, his family and their friends also hunted the area. The record fails to demonstrate any indication that Mr. Matte intended to abandon the area and further, it shows no attempt by the Soileaus to expel him during the prescriptive period.
The plaintiff did pay taxes on the land and, according to testimony, along with his wife, hunted, rode horses and occasionally brought a few head of cattle on the land. The record further established that Mr. Soileau had given a few people permission to hunt on the land. However, some of these same people had also received permission to hunt the land from Mr. Matte.
*621 While it is clear that the actions of the Soileaus disturbed Mr. Matte’s possession both physically (hunting, riding and temporarily bringing a few cows on the land) and in law (paying taxes on the land), it is well settled that such disturbances, which do not deprive a person of domination and control of the land, are insufficient to interrupt the thirty year acquisitive prescription period. See Plaisance, supra, at 615 and Montgomery v. Breaux, 338 So.2d 314 (La.App. 3 Cir.1976), writ denied 341 So.2d 410 (La. 1977).
In reviewing a judgment of the trial court we are constrained not to disturb factual findings which are not clearly wrong and which have a reasonable factual basis in the record. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993). We have scrupulously examined the record to determine whether the trial court’s judgment was, as appellant argues, clearly wrong. We find it was not.
^Accordingly, for the reasons stated above,we affirm the judgment of the trial court. All costs of this appeal are taxed against appellant, Aubrey Soileau.
AFFIRMED.