No. 2950

Second Circuit

(Second Division)

## GLASS v. STEWART ET AL.

(April 9, 1931. Opinion and Decree.)
(May 7, 1931. Rehearing Refused.)

L. K. Watkins, of Minden, attorney for plaintiff, appellant.

E. L. Stewart and Dan Stewart, of Minden, attorneys for defendants, appellees.

CULPEPPER, J. Plaintiff brings this suit as a possessory action. Defendant filed an exception of no cause or right of action, alleging:

"1. Plaintiff does not allege how he acquired the property nor that he ever possessed it by virtue of any title, or right of possession.

"2. He does not allege he had actual physical possession of the property by virtue of any title of ownership quietly ·and peaceably without interruption and without disturbance for more than one year next preceding the disturbance, or that he has suffered a real disturbance within less than one year from the filing of the suit."

This exception was referred to the merits by the court, and the case was thereupon tried on its merits. From a judgment rejecting plaintiff's demands, plaintiff has appealed.

### EXCEPTION

Plaintiff alleges he became the owner by purchase at tax sale in 1910 of the southwest quarter of northwest quarter, section 13, township 19, range 9 west; that same was assessed and sold as property belonging to the estate of Mary Jones; that "he and his authors in chain of title had actual possession of the property and that he, since his acquisition of same, had real, continuous and actual peaceable possession of same in person and by tenants and agents, exercising all the rights as owner, until the death of his wife in the year 1919, and since as owner with her children Mary and Minnie, after her death, and usufructuary until sometime in the month of March, 1926, when defendants illegally and by threats and intimidation ordered Shelley Johnson, plaintiff's tenant on the property at the time, not to cultivate the land, and prevented said tenant from cultivating it for that year."

Taking the petition as a whole, it recites, we think, all of the elements necessary to form the basis of a possessory action.

### PLEA TO JURISDICTION

Defendant has filed a plea to the jurisdiction of this court. The motion recites that neither the amount in controversy nor the nature of this suit gives this court jurisdiction of the case.

Counsel contends in his brief and oral argument that both parties to·the suit, as well as its subject-matter, are in ward 4, Webster parish, and are therefore subject

to the jurisdiction of the city court of Minden, in accordance with Act No. 18 of 1926. Since there is nothing in the record to show the parties litigant and the subject-matter of the litigation are in the ward named by counsel, this court cannot be called upon to go out of the record for information in that regard, and the case will be considered from the showing in the record.

It is true that plaintiff's original petition does not set out the value of the property involved. However, the court permitted counsel for plaintiff, during the trial of the case, to file an amended petition for the purpose of alleging value, then permitted testimony to follow establishing the value as being in excess of $100. Defense counsel objected to the filing of the amended petition and to the testimony in support of the allegations upon the ground that it came too late, and changed the issue. As stated by the trial judge, the filing of an amended petition is within the sound discretion of the court, and we see no reason to reverse his ruling. The amendment did not change the issues, neither did it appear to work any hardship upon defendant, coming as late as it did. Code of Practice, art. 419, provides:

"After issue joined, the plaintiff may, with the leave of the court, amend his original petition, provided the amendment does not alter the substance of his demand by making it different from the one originally brought."

Amendments to the pleadings should always be allowed in promotion of justice, where they do not change the issues or cause delay. These matters always address themselves to the sound discretion of the court. It is apparent that the amended and supplemental petition filed in this case did not change the issue, nor did it cause any delay, nor do we see wherein it worked any hardship upon the defendant. The ruling of the trial court, therefore, in allowing the filing of the supplemental petition, was not erroneous. The testimony taken in support of the amendment fixes the value of the property involved as being in excess of $100, which brings the case within the jurisdiction of this court, and the plea to the jurisdiction is therefore overruled.

### MERITS

Defendant's answer is a general denial; avers possession of the property to be in defendants; and denies specially having in any manner disturbed plaintiff. The case therefore presents an issue for determination solely as to whether or not plaintiff had possession of the property within the meaning of the Code, as forming the basis of a possessory action, and, if so, whether plaintiff was disturbed, either in law or in fact. Code of Practice, art. 53.

Plaintiff testified that immediately after he purchased the property in 1910 he went out to where it was, and got two negroes to point out the lines to him. He says he had no opportunity to rent it immediately, but did rent it in 1917 or 1916 to John Harris; then rented it to Lew Harris; then two years later to William Wattree; the next year to Jim Wattree; then skipped one year and rented it to John Harris and Lev Richardson. By reference to a date on an unsigned note plaintiff had, he fixed the year as being in 1925 when he rented it to Harris and Richardson. He says he rented it on February 10, 1926, to Shelley Johnson, for that year, taking Johnson's note for $35 for rent, which note he has filed in evidence. He further testifies that Shelley Johnson was on the place preparing to cultivate same, when the alleged disturbance took place.

Plaintiff called several witnesses, all but one being colored people who had worked

the land. It is shown by their testimony as well as by that of plaintiff that the land was cultivated by some one of them at various times, but does not show a continuous cultivation from year to year, some years being skipped, during which it was cultivated by no one. The testimony shows that John Harris and Lev Richardson rented the place from plaintiff in 1925, and actually worked same that year. The testimony shows that Lew Harris rented it from defendants in 1923, but that the plaintiff, upon learning that Harris had rented it from Mr. Stewart, went to Harris and told him that the land was plaintiff's property, and that Harris would have to pay rent to plaintiff. Harris worked the land that year and paid the rent to Mr. Glass at the end of the year; Mr. Stewart not protesting against his doing so. In the year 1924 Harris says he rented it from Mr. Glass direct, and paid the rent to him. Mr. Stewart made no protest whatever against Harris renting it from Mr. Glass and paying him the rent for that year.

On February 10, 1926, Shelley Johnson applied to plaintiff to rent the land for that year; plaintiff rented it to him and took his note for $35 to cover the rent. It was some time subsequent to February 10, 1926, when one of the Mr. Stewarts saw Johnson and told him he had better see his brother, the other Mr. Stewart, about renting the place, because the place belonged to them. Johnson, it seems, called to see the other Mr. Stewart, did not find him at home, and left. In a few days thereafter, this Mr. Stewart went out to where Johnson was at work on a building for a Mr. Fogle. Johnson says Mr. Stewart told him the land belonged to him (Stewart), and that he (Johnson) should not work it, unless he rented it from Mr. Stewart. Johnson says he then decided to let the land alone. As a result, Johnson

abandoned further steps toward cultivating the land. Johnson testifies that he had not gone on the place to cultivate it, but that he had purchased some farming implements preparatory to cultivate the land, and was about ready to begin the actual cultivation when Mr. Stewart came to him and told him what he did.

Mr. Stewart testified that he told Johnson the place belonged to them (meaning the two Stewarts), and, if Johnson worked it, he must pay them the rent. Mr. Stewart then says that Johnson told him he was not going to do anything, and said he was going to get his note back from Mr. Glass. Johnson never did go upon the place nor do anything towards working it after the conversation with Mr. Stewart.

Johnson testified he intended to work it, and would have worked it, had not Mr. Stewart told him what he did.

The testimony on behalf of defendants discloses that they acquired the property at tax sale in 1896, in the name of the estate of Mary Jones. They did very little toward taking actual possession under their deed. There is no record of any assessments to them filed in evidence showing that they ever paid taxes on the land. They never did rent it until about 1923, when they rented it to Lew Harris, with the results as above stated.

Mr. Stewart says he gave Henry Brown permission to cut and sell some fire wood from the land at times, also to plant a melon patch thereon in 1924, or 1925, but neither charged nor collected any rent or other compensation from him. Defendants sold the merchantable pine timber on the land in 1924 for $400 cash, giving five years in which to cut and remove it. The testimony does not show there has been any effort to cut and remove the timber, and, until that is done, the mere fact

of selling the timber would not amount to a taking of actual corporeal possession of the property.

Neither did the fact that defendants visited and walked over the land and made some effort to sell it constitute a taking of actual corporeal possession of it. This only indicated that they claimed to own it, but nothing more. There was only one occasion when defendants undertook to take actual physical possession of the property which would constitute a detention, previous to 1926. That was the occasion when they rented it to Lew Harris.

During all the years in which both plaintiff and defendants claimed ownership of this property, plaintiff was by far the most active in taking actual corporeal possession, in that he rented it and collected rents from it during a number of years. He paid taxes on it a greater portion of the time, and on each occasion defendants attempted to take possession they were met by vigorous protests from plaintiff.

Article 3433 of the Civil Code specially provides that the proprietor of a house or other tenement possesses it by his tenant. Plaintiff has definitely proved his actual possession of the property in this manner, and that his possession began in 1916 or 1917, and continued thereafter down to the moment of the disturbance. It is true he did not have a tenant actually occupying the premises at all times. But this was not necessary under the provisions of the Civil Code and the well-settled jurisprudence thereunder.

Article 3442 of the Civil Code provides that:

"When a person has once acquired possession of a thing by the corporal detention of it, the intention which he has of possessing suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either himself or by others." Handlin v. Weston Lbr. Co., 47 La. Ann. 404, 16 So. 955.

Article 3443 provides that:

"This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly; so that, although a person may have abandoned the cultivation of his estate, he shall not therefore be presumed to have abandoned the possession, but shall be presumed on the contrary to have the intention of retaining it, and shall retain it in fact."

From the evidence, plaintiff never at any time showed any intention to abandon his possession taken of the property in 1916 or 1917. On the contrary, his intention was a continuing one. The fact that defendants gave way to plaintiff the year Lew Harris worked the land, permitted plaintiff to collect the rent, and permitted Harris to rent direct from plaintiff the following year, indicated an abandonment by defendants of any intention they may have previously had of taking or holding possession.

It is clear from the foregoing, and from the evidence in this case, that plaintiff's possession of the forty acres of land in dispute was that of a continuing actual corporeal possession; that it was such a possession as to entitle him to bring a possessory action, if disturbed, under article 49 of the Code of Practice.

It remains to determine whether or not defendants did in fact or in law disturb plaintiff in his possession of this property. Article 50 of the Code of Practice provides:

"The disturbance which gives rise to the possessory action may be of two kinds: disturbance in fact, or disturbance in law."

Article 51 provides:

"Disturbance in fact occurs when one, by any act, prevents the possessor of a real estate, or of a right growing from such

an estate, from enjoying the same quietly, or throws any obstacle in the way of that enjoyment, or evicts him through violence, or otherwise."

We think the evidence clearly shows that defendants' acts resulted in the failure of plaintiff's tenant to cultivate the land, thereby depriving plaintiff of the benefits which he would have received therefrom. They caused the tenant to discontinue the leasehold and to desist from further preparations or efforts to work the land. It might be that, had the tenant been a white man, he would not have been deterred, but would have continued on and worked the place. Johnson being a colored man, however, he was more easily influenced by Mr. Stewart. This Mr. Stewart evidently knew at the time. Those acts no doubt constituted obstacles thrown in the way of plaintiff, which prevented plaintiff from holding and enjoying the possession of the premises, which he at the time was enjoying peaceably, quietly, and undisturbed, and had been for more than one year preceding. We therefore conclude that plaintiff had been in quiet and undisturbed possession of the land for more than one year prior to the filing of this suit, and that the acts of defendants constituted a disturbance in fact of plaintiff in that possession.

For the reasons above set forth, the judgment of the lower court is hereby reversed. There is now, therefore, judgment in favor of plaintiff, Alberta Glass, and against defendants, E. L. and D. W. Stewart, as prayed for, decreeing plaintiff to be in the possession of the southwest quarter of northwest quarter, section 13, township 19, range 9 west, Webster parish, La., known as the Mary Jones Place.

It is further ordered and decreed that writ of injunction issue as prayed by plaintiff, permanently enjoining and restraining defendants from further trespassing on said property, or from interfering in any way with plaintiff and his tenants in their possession and occupancy of same.

It is further ordered that defendants pay costs in both courts.