393 So.2d 811 (1981)
SEVEN WATER HOLES CORPORATION, Plaintiff-Appellant,
v.
William SPIRES and Robert Roberts, Jr., as Executor of the Mary Marshall Roberts Estate, Defendants-Appellees.
No. 14392.
Court of Appeal of Louisiana, Second Circuit.
January 13, 1981.
Rehearing Denied February 19, 1981.
*812 Travis Holley, Bastrop, for plaintiff-appellant.
Madison, Files, Garrett, Brandon & Hamaker by James P. Madison, Bastrop, Blanchard, Walker, O'Quin & Roberts by Robert Roberts, Jr., Shreveport, for defendants-appellees.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied February 19, 1981.
FRED W. JONES, Jr., Judge.
Plaintiff filed this petitory action to be recognized as the owner of an 80 acre tract to which it had record title. Defendants were the Mary M. Roberts Estate, alleged adverse claimant to plaintiff's ownership, and the Estate's tenant. In essence the defense was that the defendant Estate had acquired ownership through 30 years acquisitive prescription of an eight acre portion of the property to which plaintiff had record title. This was the primary issue presented at the trial.
Trial was had on September 21, 1979. Finding that the plea of 30 years acquisitive prescription was supported by the evidence, the trial judge rendered judgment recognizing Susan Roberts Chadwick (who had been placed in possession as legatee of her mother, Mary M. Roberts) as the owner of the disputed property. Plaintiff appeals this judgment, contending that the trial judge erred in concluding that the defendant Estate had proven every element required to sustain the plea of 30 years acquisitive prescription.
We affirm.
The law applicable to litigation of this nature is clear. The ownership of immovables may be acquired by 30 years possession despite the fact that the possessor has no record title nor is in good faith. However, that possession must be continuous and uninterrupted, public and unequivocal and "under the title of owner." When commenced corporeally, that possession, if not interrupted, may be preserved by external signs which manifest the possessor's intent to preserve his possession. Civil possession may be retained as long as any vestiges of works erected by the possessor remain on the property. Acquisition of property by this method extends only to that actually possessed. See La.Civil Code Articles 3499-3503.
It was pointed out in William T. Burton Industries, Inc. v. Cook, 322 So.2d 880 (La. App. 3rd Cir. 1975) that:

*813 "The particular acts which constitute sufficient possession for acquisition by acquisitive prescription of thirty years vary with the circumstances of the individual case (citation omitted). The nature of the land involved is the chief consideration as to what acts of possession are sufficient."
The record shows that in 1902 Susie Larkin (later married to William C. Marshall) purchased the East ½ of NW ¼, Sec. 12, Twp. 20 North, Range 7 East in Morehouse Parish. This 80 acre tract, known as the Larkin place, was situated immediately to the west of the Lynch place, another 80 acre tract, described as the West ½ of NE ¼, Sec. 12, Twp. 20 North, Range 7 East. Plaintiff acquired record title to the latter tract in 1978.
Although the ideal boundary between these two tracts was never judicially established, it seems to have been assumed by the respective property owners that the tracts were separated by the Bayou Bonne Idee, which runs in a north-south direction. However, at some undetermined time it was discovered that about 8 acres of the Lynch 80 acre tract was actually situated on the west side of the bayou, which in this area was between 150 and 250 feet in width. Since no bridge was ever constructed to afford access from one side of the bayou to the other, this 8 acre portion was in effect cut off from the main part of the Lynch place.
It was conceded that neither plaintiff nor its predecessors in title had exercised any acts of possession over the disputed 8 acres.[1] On the other hand, although neither Susie Larkin Marshall nor her daughter, Mary Marshall Roberts, ever lived on the Larkin place, a number of witnesses testified that they had a succession of tenants and lessees who possessed the place, together with the disputed 8 acres, on their behalf.
Robert Roberts, Jr., 76 years old at the time of the trial, was married to Mary Marshall Roberts in 1929. The first tenant he remembered was Jim Parson, who farmed the property under a sharecropper arrangement for many years. After Parson became incapacitated because of illness, the place was leased in 1958 to J. B. Rawlinson who farmed it for about ten years. An individual named Clack was the tenant in 1969 and 1970. He was followed by Don Sims, who leased the property from 1970 until 1976. Spires, a defendant in this suit, was the tenant from 1977 up to the trial date. Each of these lessees used the property for farming and cattle raising, consistent with the nature of the land. After the death of Susie Larkin Marshall, the tenants paid their rent to her daughter, Mary Marshall Roberts.
Earl Cox, 64, had lived near the Larkin and Lynch places since 1940. He farmed part of the Lynch place for about five years beginning in 1947 or 1948. As far back as he could remember, fences had existed along the edges of the bayou on both sides. Cox recalled that Parson had farmed the Larkin place from around 1926 or 1927 until nearly 1960, growing cotton and corn. This witness stated that he first saw a fence on the east side of the Larkin place, running along the west edge of Bayou Bonne Idee, in 1925 or 1926, and that vestiges of this fence were still visible some two weeks prior to the trial when he visited the area.
Louis Cox, 57, was reared about two miles from the Larkin place. At Parson's request Cox went on the property in 1947 or 1948 to measure for cotton preplanting. According to Cox, Parson had lived on the place for as long as he could remember. In 1951 or 1952 Cox was hunting along the bayou and observed the fence running along the east side of the Larkin place and the west side of the bayou, enclosing the disputed 8 acres with the rest of the Larkin place. He also went on the property about two weeks prior to the trial and noticed that signs of the old fence were still evident. *814 He testified that this had been an "open range" area and it was necessary for the farmers to construct fences to keep livestock out of their crops.
Jimmy McGowen, 45, owned the Lynch place from 1961 until 1973. He had been familiar with the Larkin place for nearly 30 years, and knew when Parson was sharecropping on that property. It was also his testimony that both sides of the bayou were fenced. McGowen never sought to exercise possession of the disputed 8 acres.
Don Sims, 41, went on the Larkin Place in 1960 to cut beans for his friend Rawlinson, the tenant at that time. Sims stated that Parson farmed the property as far back as he could remember. He was succeeded by Rawlinson who, according to Sims, farmed it each year he was the lessee. Sims testified that he leased the Larkin place for 9 or 10 years, beginning in the late 1960's, using it primarily for cattle raising. His testimony concerning an old fence along the western edge of the bayou corroborated that of the other witnesses.
William Spires testified that at the time of the trial he was entering the third year of his lease of the Larkin place, using it for cattle raising. He considered the bayou, for all practical purposes, to be the east boundary of the property since it was open to that waterway. He also had observed remains of the old fence along the west edge of the bayou.
In essence, each of these tenants acted as though the disputed 8 acre tract was a part of the Larkin place.
Plaintiff offered no evidence to refute the testimony of these witnesses relating to possession by tenants of the Larkin place and the disputed 8 acres. It argues, however, that one cannot acquire ownership of property by adverse possession through another person when the party claiming ownership has never initially taken corporeal possession of the property.
Pertinent to a consideration of this question are the following articles of the Louisiana Civil Code:
"Art. 3426. Possession is the detention or enjoyment of a thing, which we hold or exercise by ourselves, or by another who keeps or exercises it in our name."
"Art. 3433. One may possess a thing not only by one's self, but also by other persons.
"Thus the proprietor of a house or other tenement possesses by his tenant, or by his farmer; the minor, by his tutor; and, in general, every proprietor, by the persons who hold the thing in his name."
"Art. 3438. One may acquire possession of a thing, not only by himself, but also through others who received it for him and in his name. But in this case it is necessary that the person receiving the possession should have had intention of receiving for the other."
In Glass v. Stewart, 133 So. 787 (La.App. 2d Cir. 1931) the plaintiff in a possessory action contended that he had exercised possession of certain disputed property through various tenants, the first of whom rented the property in 1916. Agreeing with this contention, the court stated:
"Article 3433 of the Civil Code specially provides that the proprietor of a house or other tenement possesses it by his tenant. Plaintiff has definitely proved his actual possession began in 1916 or 1917, and continued thereafter down to the moment of the disturbance. It is true he did not have a tenant actually occupying the premises at all times. But this was not necessary under the provisions of the Civil Code and the well-settled jurisprudence thereunder."
Since the cited codal articles clearly provide that a lessee may possess property on behalf of his lessor, we know of no reason why the initial corporeal possession cannot be exercised by the tenant on behalf of the alleged owner to whom he pays rent. Since the record reveals that Parson was generally considered to be a sharecropper on the Larkin place through an arrangement with Susie Larkin Marshall, this is adequate evidence to establish that Parson intended to possess for his landlord, contrary to appellant's contention. Therefore, *815 we find in this case that, starting at least with Jim Parson in 1926, Susie Larkin Marshall began the corporeal possession of the disputed 8 acres.
Appellant next argues that there was no evidence that the disputed property was continuously farmed for 30 consecutive years by the tenants of Mrs. Marshall and Mrs. Roberts.
As we have pointed out, once possession for acquisitive prescription purposes is begun corporeally, it may be preserved by external and public signs evidencing to the public the possessor's intent to maintain his possession. See La.Civil Code Art. 3501. Even if appellant is correct in its assertion that the described tenants did not farm the disputed property for 30 consecutive years, we have already concluded that corporeal possession was begun for Mrs. Marshall by Parson. Thereafter the external signs of that continued possession, such as maintenance of the fence along the east boundary of the property, served to preserve that possession for more than 30 years. As noted in Glass v. Stewart, supra, it was not even necessary that a tenant be on the property every year. However, in this case there is ample evidence in the record that the disputed property was possessed by tenants of Mrs. Marshall and Mrs. Roberts from about 1926 until the date of the trial, both for farming purposes and for cattle raising. Maintenance of the fence along the west edge of the bayou, vestiges of which were still in evidence until two weeks prior to the trial, was an external sign giving notice to the public that this property was being claimed by the tenants for their landlord.
Addressing an issue involving possession in Norton v. Addie, 337 So.2d 432 (La.1976)[2], the court made the following pertinent comment:
"The exercise of exclusive grazing privileges over the land, accompanied by the maintenance of the enclosures constituted corporeal possession over the entire tract.
"Willis LaRue, who leased the land from plaintiff for pasturage, possessed on behalf of his lessor, La.C.C. arts. 3438 and 3445. Witnesses for defendant asserted that the fence had been neglected over the years and was in a state of disrepair. But this testimony, if true, would not derogate from the proof of plaintiff's possession. The witnesses concede that the fence, or remains of it, was clearly visible along the old fence line. This was sufficient to give defendant notice of the limits of plaintiff's continuing possession."
Further, as held in Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975):
"Our Civil Code provisions make it clear that one who has acquired corporeal possession continues in possession until he transfers it or abandons it, or until another expels him from it, or until he permits the estate to be usurped and held for a year without doing any act of possession or without interfering with the usurper's possession."
In this case the only evidence relating to anyone corporeally possessing the disputed 8 acres was that describing the activities of the tenants of Mrs. Marshall and her daughter. There is absolutely no evidence that, after acquiring corporeal possession through Parson, Mrs. Marshall ever transferred or abandoned that possession, or was expelled by a usurper.
We conclude that the tenants of Mrs. Marshall and Mrs. Roberts exercised possession of the disputed property on behalf of their lessors for more than 30 years. This possession was continuous and uninterrupted during that time, was public and unequivocal, and was "under the title of owner" in the sense that the disputed property was used as though it belonged to the lessors.
For these reasons we affirm the judgment of the trial court, at appellant's cost.
NOTES
[1] Appellant argues that, by hunting on the disputed property while he owned the Lynch place, McGowen was exercising possession of the 8 acre tract. However, a reading of his testimony indicates that this obviously was not McGowen's intent, in view of his statement that he hunted on the entire Larkin place together with "everything else down there."
[2] Since the type of possession required for a possessory action is identical to that required to commence the running of acquisitive prescription, cases involving actions of that nature are relevant to the issue of possession in this case. See Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952).