794 So.2d 862 (2000)
DELACROIX CORPORATION
v.
Chalin O. PEREZ.
Stella Lands, Inc. and Chalin O. Perez,
v.
Delacroix Corporation.
No. 98-CA-2447.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 2000.
Writ Denied January 26, 2001.
*863 James E. Blazek, Donna M. Borrello, Adams and Reese, New Orleans, LA, and *864 John B. Wilkinson, Wilkinson & Wilkinson, New Orleans, LA, Counsel for Delacroix Corporation.
J. Carter Wilkinson, Troy J. Charpentier, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, Counsel for Stella Lands, Inc. and Chalin O. Perez.
Court composed of Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, Judge MIRIAM WALTZER, Judge DENNIS R. BAGNERIS, Sr. and Judge Pro Tem. PHILIP C. CIACCIO.
PHILIP C. CIACCIO, Judge Pro Tempore.
In this consolidated case, Delacroix Corporation ("Delacroix") appeals a judgment of the trial court finding that defendants, Stella Lands, Inc. ("Stella Lands") and Chalin O. Perez ("Perez"), had acquired ownership in a disputed tract of land by thirty years acquisitive prescription. The judgment dismissed Delacroix's action to enjoin trespass against Perez, and the court retained jurisdiction over the remaining proceedings to determine the proper location of the boundary between the two properties. The trial court stayed those proceedings pending the review of the issue of acquisitive prescription on appeal. For the reasons stated more fully herein, we reverse the trial court's judgment and remand the case to the trial court for further proceedings.

FACTS
In 1929, Delacroix Corporation acquired 109,567 acres of land in Plaquemines Parish, including the property at issue. The two tracts of land relevant to this case included the "Stella" tract and the "Scarsdale" tract. The parties did not contest that Delacroix had a recorded title to the disputed acreage.
In 1951, Chalin Perez purchased 100 acres of the Stella tract fronting on the Mississippi River. In 1953, Perez entered into a grazing lease with Stella Lands for the 100 acres to the east of the land he purchased in 1951. The lease was "solely for cattle grazing and for hunting and trapping purposes." The lease between Stella Lands and Perez was renewed several times until Perez purchased a portion of the stock of Stella Lands in 1972 and the remainder in 1973 under the name of South Louisiana Enterprises. The Stella tract consisted of the property purchased in 1951 and 1973.
The Scarsdale tract is adjacent to and to the north of the Stella tract and is also adjacent to the property at issue. In 1953, Chalin Perez purchased part of the Scarsdale tract extending back to the Forty Arpent Line. The disputed property is adjacent to Scarsdale and Stella, and Perez began using the Delacroix property for cattle grazing soon after his purchase of those two tracts of land.
On December 22, 1993, Delacroix filed a petition to enjoin trespass against Perez, and included a claim for damages. In 1994, Stella Lands and Perez filed a separate petition to be maintained in possession of the disputed property. The actions were consolidated for trial that was held from February 10-26, 1998. In its judgment of March 16, 1998, the trial court ruled that Perez and Stella Lands had been in possession of a disputed tract of land for more than thirty years and had acquired ownership of the property by acquisitive prescription. Based upon the stipulation of the parties, the trial court retained jurisdiction over the boundary dispute and stayed further proceedings on that issue pending the appeal of the prescription issue.
On appeal Delacroix contends the trial court erred in: (1) declaring that Perez *865 and Stella Lands were owners of the disputed property; and (2) excluding Delacroix's Exhibits 41-A through 41-G. Although Perez and Stella Lands assign error in the trial court's ruling on the admission of evidence in the record, Perez and Stella Lands have failed to answer Delacroix's appeal or file a separate motion to appeal the trial court's judgment, and thus we will not consider the assignments raised in their brief.

ISSUES
The disputed property concerns land lying between the Forty Arpent line and the west bank of the Forty Arpent Canal, and includes approximately 294 acres of land. Perez had legal title of the Stella and Scarsdale tracts only to the Forty Arpent line, but is claiming possession to the Forty Arpent Canal.
Delacroix claims that Perez had Delacroix's permission to use the property, and as a permittee, Perez was a precarious possessor and could not effect legal possession against his permittor, Delacroix. Delacroix also argues that it had title to the property and at all times maintained corporeal possession. Delacroix maintains that Perez's possession was clandestine and/or equivocal and had no legal effect.
Conversely, Perez argues that when he purchased the Stella and Scarsdale acreage in 1951 and 1953 respectively, he began using the property back to the Forty Arpent Canal, and he believed that this was the property line between his acreage and the Delacroix property. He argues that he used the subject property on a regular basis for grazing cattle, and later for hunting and crawfish farming. Perez contends that he had uninterrupted possession of the disputed property from the time he purchased the adjoining land until Delacroix's suit was filed in 1993.

LAW AND STANDARD OF REVIEW
Immovable property may be acquired through thirty-years acquisitive prescription without good faith or just title. La. C.C. art. 3486. The party alleging acquisitive prescription bears the burden of proving intent to possess as owner and that his possession has been continuous and uninterrupted, peaceable, public and unequivocal. La. C.C. arts. 3424, 3476; Rathborne v. Hale, 95-1225 (La. App. 4 Cir. 1/19/96), 667 So.2d 1197, writ denied, 96-0747 (La.5/3/96), 672 So.2d 692. The burden of proof of acquisitive prescription is by a preponderance of evidence; every presumption is in favor of the titleholder. Id.; Bradford v. Thomas, 344 So.2d 717 (La.App. 2 Cir.), writ denied, 346 So.2d 714 (La.1977).
Whether a party has possessed property for thirty years without interruption is a factual issue which will not be disturbed on appeal absent a showing of abuse of discretion. Rogers v. Haughton Timber Co., Inc., 503 So.2d 1079 (La.App. 2 Cir.1987). However, unlike questions of fact, questions of law are not reviewed under the manifest error standard. Instead, questions of law are resolved by determining whether the trial judge was legally correct or legally incorrect. Palmer v. Blue Water Marine Catering, Inc., 95-342 (La.App. 5 Cir. 10/18/95), 663 So.2d 780. Where the trial court's decision is based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-1072 (La. 1983).

DISCUSSION
By its first assignment of error, Delacroix contends that the trial court committed *866 an error of law, and the judgment must therefore be reversed.
In his oral statements from the bench following the trial, the trial court stated in part:
In this matter, there is no evidence of any activity by Delacroix which would have deprived Perez of domination and control over this land. On the contrary, even Delacroix's witnesses confirm the domination and control over this property that Perez had. Whether such control was with Delacroix's consent or acquiescence or not is not relevant. It is the intent of the possessor, not the owner, which is relevant on that issue.
(Emphasis ours.)
Specifically, Delacroix contends that this is a misstatement of the law on acquisitive prescription, and specifically the well-established law on precarious possession. We agree.
Under La. C.C. art. 3437, possession is precarious when it is exercised with the permission of the owner or on his behalf. Acquisitive prescription does not run in favor of a precarious possessor or his universal successor, who is presumed to possess for another although he may intend to possess for himself. La. C.C. arts. 3477, 3438; Nugent v. Franks, 471 So.2d 816 (La.App. 2 Cir.1985); Feazel v. Howard, 511 So.2d 1306 (La.App. 2 Cir.), writ denied, 514 So.2d 456 (La.1987).
Thus, whether Perez possessed the property with the consent of Delacroix is relevant to Perez's claim of acquisitive prescription, and the trial court erred in failing to consider Delacroix's intent in allowing Perez to remain on the property.
In the present case, the judge's opinion indicates that his ruling was based on his erroneous belief that it was irrelevant whether Perez possessed the property with Delacroix's consent or permission. Accordingly, we must independently review the record, applying the correct legal principles, and determine whether Perez met his burden of proving ownership of the disputed property by acquisitive prescription.
The parties did not contest in this case that Delacroix had record title to the disputed acreage. Further, although the record shows that Chalin Perez used the disputed tract for many purposes over the course of several decades, there is no evidence of a written lease agreement between the parties regarding this property. However, Delacroix is claiming a verbal agreement with Manuel Molero and Mrs. O'Toole in their capacities as President of Delacroix. As these then-presidents of the corporation are now deceased, Delacroix had to prove the existence of an agreement by circumstantial evidence.
Delacroix contends on appeal that the trial court erred in excluding their Exhibits 41A-41G from admission into the record. Delacroix argues that these exhibits show that Perez expressly admitted that his intent was not adverse possession. The trial court denied admission of these exhibits, however, on the basis that it was part of a compromise agreement, citing La. C.E. art. 408. Delacroix proffered the evidence for our review.
Article 408 of the Louisiana Code of Evidence limits the admissibility at trial of evidence pertaining to compromise and offers to compromise. Section A of that article provides as follows:
In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to *867 prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This Article does not require the exclusion of any evidence otherwise admissible merely because it is presented in the course of compromise negotiations. This Article also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
However, the proffered documents do not pertain to offers to compromise the instant litigation. Rather, the documents were correspondence regarding Delacroix's efforts to lay the boundary line between Delacroix's and Perez's property. Although the letters were obviously an attempt by the parties to form a cooperative agreement, they do not consist of compromise negotiations on the issue of Perez's subsequent claim of adverse possession. This evidence is not the type of evidence relating to compromise negotiations and agreements which article 408 seeks to exclude. Further, the documents contain a statement made by Perez which is otherwise admissible pursuant to La. C.E. art. 801(D)(2), a personal admission. We conclude that the trial court erred in finding that these documents were inadmissible based on La. C.E. art. 408.
Exhibit 41-E, the entirety of which is attached to this opinion as Exhibit "A", is a letter dated June 3, 1993 from Chalin Perez to Dorothy Benge. The letter provides in part as follows:
I acknowledge that a portion of the crayfish pond is to the best of my knowledge on Delacroix Corporation property. However it was always my understanding that all of the rear (forty arpent line) up river portion of my crayfish pond, canal, and levee were on my property. Therefore, I am not prepared to acknowledge that if, in fact, a line subsequently is determined to be otherwise that I would acknowledge your ownership in that part of the property. The area involved would be minimal, but on the other hand the future relocation of my levees, canals and ditches would be very incovenient [sic] and costly. I appreciate your offer of long term lease with a minimal rental to satisfy your concern of adverse possession and am willing to enter into such a lease subject to acceptable conditions.
As I explained to you at our meeting, since I did not, at that time, have sufficient information to determine the location of the boundary line, I could not make definite assurances to you except that subject to the above paragraph, it was not my intention to adversely possess land owned by the Delacroix Corporation.
This statement by Chalin Perez must be viewed as evidence that although Perez may not have been aware of the precise boundary line between the property, he did not intend to claim ownership of property to which Delacroix held the title. Thus, the exclusion of this document was clearly prejudicial to Delacroix. We therefore reverse the trial court's judgment excluding the proffered documents and hereby declare them admitted into evidence.
This evidence alone should be sufficient proof that Perez was a precarious possessor of the disputed property. However, there was ample additional evidence presented at trial to support Delacroix's claim that Perez was using the property with their permission.
At trial, Dorothy Benge, Delacroix's president, testified that she understood *868 from discussions with her mother, Mrs. O'Toole, that Perez had permission to use the property. She stated that both she and her mother were intimidated by Perez's position of power in parish government. She also testified that Delacroix's employees were informed of this fact and were told to accommodate Mr. Perez in any way possible. Delacroix's employees, Jerry Alphonso, Donald Ansardi and Clark Lozes, corroborated Ms. Benge's testimony that Perez had permission to use the property. These Delacroix employees testified that they were told that Perez had permission to use the property and to accommodate him.
In addition, Delacroix presented correspondence dated October 13, 1980 from Delacroix's counsel to Perez which unequivocally stated that Delacroix was "accommodating" Perez's use of the disputed property. (Exhibit 39F).
Perez testified at trial that he began using the disputed property, which had no visible boundary other than the Forty Arpent Canal, for varied purposes. He stated that he believed his property line extended to the canal and he denied obtaining permission from Delacroix to use the tract. Although Perez testified at trial that he did not receive permission from Delacroix to use this property, the evidence contained in the record fails to support this contention.
It is undisputed that Delacroix Corporation is an owner of thousands of acres of land in Plaquemines parish and has gone to great lengths to protect its ownership against adverse possessors. It maintains regular inspections and patrols by land, water and air to make certain that trespassers do not acquire any rights to its property, a large portion of which is undeveloped. Notwithstanding this fact, Chalin Perez was allowed to use Delacroix's property on a regular basis with their knowledge. Perez and Delacroix apparently resided as neighbors on good terms for many years before this controversy arose, and all these facts are relevant evidence in this case. The weight of the evidence shows that had Perez not obtained consent from Delacroix for the use of the property, he would have certainly been evicted by Delacroix who was aware of his presence on the property for more than thirty years.
Under the circumstances presented here, we find that the evidence establishes that Perez was using the property with the consent and permission of Delacroix. Thus, Perez was a precarious possessor who is presumed to have possessed on behalf of Delacroix, his permittor, regardless of whether he intended to possess for himself. La. C.C. art. 3438. Acquisitive prescription therefore did not run in favor of Perez. La. C.C. art. 3477.
Further, there is no indication in the record that Perez at any point terminated the precarious possession or changed the nature of the possession by acts that were sufficient to give notice to Delacroix of such a change.
A precarious possessor commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing. La. C.C. arts. 3439; 3478.[1] There is no evidence on the *869 record that Chalin Perez gave notice to Delacroix that he intended to possess this property for himself. In fact, his actions demonstrated that he was operating within the terms of the agreement allowing him to use the property. Although Perez used the property for many purposes over the course of several decades, he did not manifest his intention to possess as owner by overt and unambiguous acts.
The intent to possess as owner cannot be covert and must be express. Although it may be implied if there is open, notorious, public, continuous and uninterrupted possession, which has to be to the exclusion of the owners, there must be strong evidence that gives the owner some notice that his property is in jeopardy. Armstrong v. Armstrong, 493 So.2d 253 (La.App. 3 Cir.), writ denied, 496 So.2d 353 (La.1986).
Notwithstanding the fact that Perez's use of the property at issue was open, public and continuous, the evidence indicates that Perez did not take overt steps that would have alerted Delacroix that Perez intended to possess for himself or that Delacroix's property was in jeopardy. We recognized that Perez had unbridled use of the subject property: he erected gates on two of the canals on the property, he built duck blinds and deer stands and at one point evicted from the property a Delacroix permittee who was hunting on the property.
However, the record also indicates that Perez allowed Delacroix access to the property which refutes Perez's claim of ownership. The record also indicates that Perez's use of the property did not interfere with Delacroix's exercise of its rights of ownership. During this time, Delacroix granted innumerable oil leases, seismic rights of way and the actual drilling of two oil wells on its property without the interference of Perez. Delacroix submitted evidence that two oil wells were drilled on the disputed property by its lessees during Perez's possession of the property. Perez argues that this activity is insignificant because the drilling was not conducted for such a time period to interrupt Perez's possession of the property. However, we find the drilling activity to be significant in that it indicates that Perez was a permittee of Delacroix; otherwise, he presumably would not have allowed Delacroix to drill for oil on his land.
Further, the record shows that Perez was a lawyer and a knowledgeable oil lessor. The record indicates that Perez never attempted to grant oil leases on the disputed property which would have been consistent with his ownership of the property.
In addition, Delacroix presented evidence of geophysical seismic activity in 1973 on the disputed property. If Perez had believed that he owned the property as he testified at trial, it is unlikely that he would have allowed Delacroix to have this kind of access to the property. In addition, evidence presented at trial indicates that Delacroix continued to pay taxes on the property and grant mineral leases. Moreover, Perez entertained discussions with Delacroix concerning a lease for the property, but delayed signing any such agreement, allowing Delacroix to believe that he understood that he was possessing the property with their permission.
We find that by failing to overtly challenge Delacroix's use of the subject property, Perez in effect lulled Delacroix into a false sense of security that Perez was operating *870 within the terms of the oral agreement between the parties. As outlined above, Perez did nothing to interfere with the exercise of Delacroix's ownership right to this property. Perez's actions in this case must be interpreted in one of two ways: either he did not protest Delacroix's ownership rights because he acknowledged he did not own the property, or he did not protest the ownership rights because he did not want to alert Delacroix of his intention to claim ownership for himself by adverse possession. Under either scenario, Perez's claim of ownership fails.
It is readily apparent that the fact that Perez allowed these activities on the property at the instruction of Delacroix should not be evaluated as evidence of adverse possession. Since neither Perez nor Stella Lands ever gave sufficient notice to Delacroix of their intent to possess the disputed tract as owner, acquisitive prescription never commenced in favor of either one. La. C.C. art. 3478.
Further, the record indicates that Chalin Perez acknowledged Delacroix's ownership of the property during the course of his use of the property. La. C.C. art. 3464 provides that "prescription is interrupted when one acknowledges the right of the person against whom he commences to prescribe." One who acknowledges another as owner cannot acquire legal possession because their possession is not acquired by an intention to possess for himself. Briggs v. Pellerin, 428 So.2d 1087 (La.App. 1 Cir.1983).
The record indicates that during the 1960s Perez built a crawfish pond which was partially on the disputed property. In early 1980, the IRS began an investigation into whether Perez, the parish president at the time, had used parish equipment for the construction of the pond. In connection with this investigation, Perez requested from Delacroix a written assertion of Delacroix's ownership of the disputed acreage for the purpose of showing the work was not only done on the Perez property. Delacroix introduced an office memorandum dated August 19, 1980 from Delacroix's attorney to Ms. Benge's mother, Mrs. O'Toole. Ms. Benge read that document into the record, and the document indicates that Delacroix agreed to provide written affirmation to Perez that Delacroix owned part of the acreage and no consideration passed from Perez to Delacroix for the use of the land on which the crawfish pond was located.
Delacroix also introduced a letter from Chalin Perez dated August 22, 1980 in which he refers to a rough draft of a letter of Delacroix Corporation. Perez stated that the letter was being requested by the IRS in examination of his income tax return. Ms. Benge read the rough draft of the letter into the record, which provided that Delacroix Corporation is the owner of the property extending from the Forty Arpent Line to the Forty Arpent Canal. Delacroix agreed to send this letter in return for a lease from Perez for the subject property.
The record also contains a memorandum from Delacroix's counsel to Mrs. O'Toole that the letter furnished by Delacroix at the request of the IRS had been successful and the matter had been dropped by the IRS. There was also a notation in this memorandum dated December 4, 1980 concerning a lease had been provided to Perez for the subject property.
We interpret these documents in the record as evidence that Chalin Perez acknowledged ownership of the property by Delacroix. We hold that even assuming prescription had begun to run in favor of Perez, this acknowledgement in 1980 interrupted the prescription. The trial court erred in holding otherwise.

*871 CONCLUSION

Accordingly, for the reasons assigned herein, the judgment of the trial court in favor of Chalin Perez and Stella Lands, Inc. and against the Delacroix Corporation is hereby reversed and set aside. Judgment is hereby rendered in favor of the Delacroix Corporation and against Chalin Perez and Stella Lands, Inc. enjoining the trespass of Perez and Stella Lands on the subject property as described in Delacroix's petition. The matter is remanded to the trial court to consider Delacroix's claim for damages and to set a boundary line between the properties. All costs of the trial court and appellate proceedings are to be borne by Chalin Perez and Stella Lands, Inc.
REVERSED AND RENDERED CASE REMANDED
BYRNES, J., dissents with reasons.
BYRNES, J., dissenting with reasons.
I respectfully dissent based on my conclusion that the trial court was not clearly wrong in finding that Perez acquired the disputed property by thirty years acquisitive prescription.
Delacroix argues that the trial court misapplied the law when it held that it was not relevant whether Perez had Delacroix's permission to be on the disputed property. Delacroix avers that Perez was a precarious possessor. Because Perez had Delacroix's permission to be on the property, Perez could not have adverse possession of the property for thirty years under La. C.C. art. 3437.
In court on March 2, 1998 the trial court explained its reasons for its judgment. The trial court included the following statements:
In this manner, there is no evidence of any activity by Delacroix which would have deprived Perez of dominion and control over this land. On the contrary, even Delacroix's witnesses confirm the domination and control over property that Perez had. Whether such control was with Delacroix's consent or acquiescence or not is not relevant. It is the intent of the possessor, not the owner, which is relevant on that issue.
The trial court found that there was no evidence of any activity by Delacroix that would have deprived Perez of dominion and control over the disputed land. The trial court noted that it is not the knowledge of the possessor, but the character of his possession that is important under Livingston v. Unopened Succession of Dixon, 589 So.2d 598 (La.App. 2 Cir.1991). In that case, the appellate court held that even if the landowner acknowledged that he did not own property up to the fence line, the landowner possessed the adjoining strip with the intent to own, as required for acquisitive prescription, by raising cattle and crops on it, cutting timber from it, and frequently using it for hunting.
In Snellings v. Lutz, 219 So.2d 781 (La. App. 2 Cir.1969), writ refused, 253 La. 1090, 221 So.2d 520 (La.1969), the appellate court stated:
...The acquisition of knowledge that the visible boundary does not coincide with the ideal boundary does not change the character of possession exercised by one who claims ownership of land beyond his ideal title. It is not the knowledge of the possessor, but the character of his possession that is important. If that possession is as owner, knowledge of the existence of the ideal boundary at a different place from the visible bounds of the land possessed should not change the nature of the possession. Possession having been commenced as owner, it is presumed to be continued in the *872 same capacity until the contrary is shown.
In the present case Delacroix correctly asserts that Perez could not be an adverse possessor if he had Delacroix's permission to be on the disputed property. Under La. C.C. 3437, possession is precarious when it is exercised with the permission of the owner or on his behalf. Acquisitive prescription does not run in favor of a precarious possessor or his universal successor. La. C.C. art. 3477; Nugent v. Franks, 471 So.2d 816 (La.App. 2 Cir. 1985). The owner's mere knowledge that someone is possessing the property adverse to his ownership does not prevent the running of acquisitive prescription. Merchant v. Acadia-Vermilion Irr. Co., Inc., 476 So.2d 1014 (La.App. 3 Cir.1985).
In the present case, the trial court was correct in finding that even if Perez had knowledge that the disputed property did not belong to him but belonged to Delacroix, Perez could be found to be an adverse possessor in bad faith by thirty years acquisitive prescription. To be an adverse possessor one would have to show that he did not have permission to be on the property and that he used the property as the owner. A person pleading acquisitive prescription of thirty years bears the burden of proving unequivocal, continuous, uninterrupted, public and adverse possession by a preponderance of the evidence under La. C.C. 3476.
In Rathborne v. Hale, 95-1225 (La.App. 4 Cir. 1/19/96), 667 So.2d 1197, 1201, writ denied, 96-0747 (La.5/3/96), 672 So.2d 692, the party without title averred that the trial court misinterpreted the law by requiring a heavier burden of proof of showing adverse ownership or the intent to adversely possess by clear and convincing evidence. This court found that the trial court's reasons were paraphrasing the requirements necessary to prove adverse possession. Even assuming that the trial court applied the incorrect burden of proof, it did not prevent the appellate court form applying the manifest error standard to the court's factual conclusions.
In the present case Livingston, supra, and Snellings, supra provide a basis for the trial court's conclusion that the acquisition of knowledge (that the title to the property belongs to someone else), by the adverse possessor is not relevant. Even assuming that the trial court did not find that consent or permission is relevant, if it is established that Perez did not have permission to be on the land, then Perez could be an adverse possessor even if he had knowledge that the property did not belong to him.
Delacroix was aware of Perez's use of the property for over thirty years before it took action to intervene. There was no evidence that there was any written agreement entered into between Delacroix and Perez or Delacroix and Stella. Delacroix did not show by a preponderance of the evidence that Perez sought Delacroix's permission to use the disputed land or that Delacroix gave its permission for Perez's use. In Delacroix's file containing hunting permits, there were no hunting permits issued by Delacroix to Perez or Stella. The only evidence of an agreement was Ms. Dorothy Benge's testimony that she understood from discussions with her mother, Mrs. O'Toole, that Perez had permission to use the property. Delacroix's employees, Jerry Alphonso, Donald Ansardi and Clark Lozes corroborated Ms. Benge's testimony that Perez had permission to use the property. These Delacroix employees testified that they were told that Perez had permission to use the property and to accommodate him. However, no one testified that they personally saw anyone from Delacroix give permission to Perez to be on the disputed land at any *873 time. No one testified that Perez asked permission to be there or to carry out any of his various activities over the years. Considering the facts in this case, Perez has shown that Delacroix did not give him permission to be there or to engage in various activities on the disputed property by a preponderance of the evidence. Therefore, the trial court's statement of the law does not affect this court's application of the manifest error standard of review to the trial court's factual conclusions.
Immovable property may be acquired through thirty-years acquisitive prescription without good faith or just title. La. C.C. art. 3486. A person pleading acquisitive prescription of thirty years bears the burden of proving that he intended to possess as owner and his possession was unequivocal, continuous, uninterrupted, public and adverse possession by a preponderance of the evidence. La. C.C. arts. 3424, 3476, Rathborne, supra. The burden of proof of acquisitive prescription is by a preponderance of evidence; every presumption is in favor of the title holder. Id., Bradford v. Thomas, 344 So.2d 717 (La.App. 2 Cir.1977), writ denied 346 So.2d 714 (La.1977).
A determination of whether a party has possessed property for thirty years is a question of fact. Livingston v. Unopened Succession of Dixon, 589 So.2d 598 (La. App. 2 Cir.1991); Phillips v. Fisher, 93-928 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305. Findings based on witnesses' credibility are given great deference. Rosell v. ESCO, 549 So.2d 840 (La.1989); Goins v. Depart. of Police, 570 So.2d 93 (La.App. 4 Cir.1990). The reviewing court must give great weight to factual conclusions of the trier of fact. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987). In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the fact finder, we are cognizant of our constitutional duty to review facts, not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221. Where there is competent evidence on both sides, the reviewing court should not overrule the trial court's findings. Sims v. State Farm Auto. Ins. Co., 98-1613 (La.3/2/99), 731 So.2d 197.
Concerning the disputed portion of the property located adjacent to Perez's Stella tract, Delacroix contends that the trial court erred in finding that Stella Lands possessed it as owner for the requisite thirty years where Perez failed to establish an intent on the part of Stella Lands to possess as owner during the time Perez was the lessee of the rear portion of the Stella tract.
Under La. C.C. art. 3424, "[t]o acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." Under La. C.C. art. 3428, "[o]ne may acquire possession of a thing through another who takes it for him and in his name. The person taking possession must intend to do so for another." Under La. C.C. art. 3429, "[p]ossession may be exercised by the possessor or another who holds the thing for him and in his name. Thus, a lessor possesses through his lessee." The intent to take as owner and the taking of possession may be done by the *874 lessee. The lessee may possess property on behalf of his lessor. In Seven Water Holes Corp. v. Spires, 393 So.2d 811 (La. App. 2 Cir.1981), writ denied, 399 So.2d 610 (La.1981), the appellate court found that such an intent to possess on behalf of the lessor is established not by the lessee's subjective beliefs, but objectively by his external acts, i.e., farming, etc.
In the present case Perez stated that from the time he took possession of the area behind Stella Plantation as lessee, he possessed the land on behalf of Stella. He testified that he thought that the Stella land included property to the 40 Arpent Canal. Perez's actions of using the Stella land that he bought in the same manner and for the same purposes that he used the land he leased from Stella show that he intended to possess the property in dispute on Stella's behalf as the owner. Perez's intent to use as the owner is sufficient to acquire the property by thirty-years acquisitive prescription.
By physically possessing the land, the non-owner provided adequate notice to the record owner and the public at large that he intended to possess property for himself as owner, for purposes of acquisitive prescription in Neely v. Turner, 97-1125 (La.App. 3 Cir. 2/4/98), 707 So.2d 1298, writ granted in part; jmt. vacated in part on other grounds, 98-1184 (La.6/5/98), 720 So.2d 673.
Delacroix maintains that Perez failed to show that his possession was unequivocal, and that Perez must prove possession inch by inch and not just over the whole area. However, the title owner may rely on the doctrine of constructive possession in which possession in part is possession in whole. A.M.K.U. Trust v. Talley, 580 So.2d 1116 (La.App. 4 Cir.1991). One possessing without title must prove possession inch by inch. Chaney v. State Mineral Bd., 444 So.2d 105, 108 (La.1983).
It is undisputed that Perez is claiming ownership beyond what is described in his title. The possession required to prove acquisitive prescription pursuant to the boundary action of La. C.C. art. 794 is the same as that under the general acquisitive prescription articles of the code. Rathborne, supra. La. C.C. art. 794 provides:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds. [Emphasis added.]
In Gelpi v. Shall, 355 So.2d 1014, 1016 (La.App. 4 Cir.1978), this court stated:
[W]here there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds.
In Rathborne, supra 667 So.2d at 1201, this court noted:
An enclosure does not require a fence but it does require that the land possessed as owner may be established with certainty, either by natural or artificial marks, sufficient to give notice to the world of the character and the extent of *875 the possession, as well as its full identity and its certain boundaries....
In the present case the disputed land is between the 40 Arpent line and the 40 Arpent Canal. Perez had legal title only to the 40 Arpent line but is claiming possession over to the 40 Arpent Canal. The canal forms a natural visible boundary whereas the 40 Arpent line is not a visible boundary. Where the land boundary is established with certainty by the natural mark of the land sufficient to give notice to the world, the adverse possessor can show that he possessed the whole disputed area as a whole by a preponderance of the evidence if his possession was unequivocal, continuous, uninterrupted, public and adverse possession under La. C.C. 3476.
Under C.C. 3433, "[p]ossession is lost when the possessor manifests his intent to abandon it or when he is evicted by another by force or usurpation." The use of property by an adverse possessor according to its nature constitutes an eviction. La. C.C. 3433, Comment (d), Harry Bourg Corp. v. Punch, 94-1557 (La.App. 1 Cir. 4/7/95), 653 So.2d 1322. To constitute public possession, there must be substantial and readily physical signs of adverse possession and visible evidence that places the owner on notice. Boneno v. Lasseigne, 534 So.2d 968 (La.App. 5 Cir.1988). The disturbance must be accomplished by some actual deed or act that notifies the original possessor that his dominion has been seriously challenged. Evans v. Dunn, 458 So.2d 650 (La.App. 3 Cir.1984).
The fact of physical possession by a nonowner is sufficient notice of the record owner and the public at large that a nonowner intends to possess the property for himself, as owner. Chevron v. Landry, 558 So.2d 242 (La.1990). Corporeal possession and the necessity of having the intention to possess as the owner may be inferred by the surrounding circumstances. Livingston, supra. What constitutes possession depends primarily on the nature of the property; the quality of possession required in a particular case depends not only on its classification as good or bad faith possession, but also on the type of land in dispute. Chevron, supra. The acts of possession required in the case of farmland must be of a greater quality than in the case of woodland; and, a greater quality of possession is required in the case of woodland than in the case of swamp or marsh land. Id. Further, where an individual claims by corporeal possession alone and without title, he must show an adverse possession within enclosures. Id. The maintenance of cattle or a pasture on an enclosed tract of land constitutes corporeal possession; "enclosed" does not necessarily mean fenced in, but requires that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, where by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. Souther v. Domingue, 238 So.2d 264 (La.App. 3 Cir.1970), writ refused, 256 La. 891, 239 So.2d 544 (La. 1970).
In the present case Delacroix submits that 1980 letters and memoranda concerning an IRS investigation and newspaper articles supported its position that Perez acknowledged that Delacroix was the owner of the disputed property. Perez asked Delacroix to help in explaining Perez did not own all of the property around one of the two crawfish ponds, and could not be held solely responsible in an investigation. Delacroix also presented a memorandum for the hunting file that Perez was using the disputed sections. The note was *876 signed by Merle E. Waltzer in 1964. Delacroix asserts that the letters, notes, etc. were evidence of an interruption of any claim of adverse possession by Perez.
Once possession has begun, it continues unless it is abandoned or the possessor is evicted. La. C.C. 3433. A statement must be clear, specific, positive and unequivocal and must be made with the intention to interrupt prescription before it will be considered an acknowledgment. Mulkey v. Cate, 424 So.2d 1098 (La.App. 1 Cir.1982), writ denied, 429 So.2d 144 (La.1983); Finley v. Hailey, 389 So.2d 829 (La.App. 3 Cir.1980). In Harmon v. Harmon, 617 So.2d 1323 (La.App. 3 Cir.1993), writ denied, 625 So.2d 168 (La.1993), the defendant offered to buy from the plaintiff the property which the plaintiff claimed. The appellate court found that such an offer constituted neither a renunciation of prescription nor an acknowledgment of the plaintiff's ownership. In Livingston, supra, and Snellings, supra, the acquisition of knowledge that the visible boundary did not coincide with the title boundary did not interrupt prescription as long as the adverse possessor continued to possess the property as owner.
In the present case, the newspaper articles, letters and memoranda did not interrupt prescription where Perez continued to possess the property as owner. In fact, these documents may be used to refute Delacroix's claim that Delacroix maintained possession of the disputed property. Although the documents show that Delacroix knew that Perez was possessing the land adversely, Delacroix did nothing to stop Perez from doing so. Although Delacroix knew about Perez's allowing the right of way for the drilling of a well, as well as creation and maintenance of the crawfish pond, roads, gates, levees, duck and deer hunting blinds, and roaming cattle on the disputed property, Delacroix did not question Perez's activities until Delacroix attempted to settle the matter before filing suit in the early 1990's.
Delacroix claims that it maintained possession of the disputed property because it conducted oil, gas and mineral activity. Delacroix presented evidence that two wells were drilled on the property in dispute by Delacroix's lessees. Under La. C.C. art. 3465, acquisitive prescription is interrupted only when possession is lost. Possession is lost when the possessor manifests his intention to abandon it or when he is evicted either by force or usurpation accomplished by one year's corporeal possession. Pringle v. Gassiott, 499 So.2d 738 (La.App. 3 Cir.1986). The Mecom Petroleum Company which had Delacroix's permission to drill on the disputed area, spudded the well on September 12, 1955, and abandoned the well as a dry hole on January 30, 1956, which was less than one year. The Intramerican Energy Corporation which had Delacroix's permission to drill on the disputed property, spudded the well on September 24, 1979 and plugged and abandoned the well as a dry hole on October 21, 1979, which was also less than one year.
Delacroix granted geophysical seismic agreements on its property. According to the testimony of Delacroix's witness, James Rayborn, two of the seismic lines ran through the disputed acreage. There was no evidence showing that the two lines existed for more than one year, which is required to interrupt Perez and Stella's possession. The companies that ran the seismic lines had the permission of all the surrounding landowners before undertaking any activities. Therefore, the companies who carried out the seismic activity were not exercising possession on behalf of any particular party to the exclusion of other parties who had also given permission.
*877 Delacroix asserts that it continued to pay taxes and grant mineral leases on the property in dispute. However, in Soileau v. Matte, 94-676 (La.App. 3 Cir. 12/7/94), 647 So.2d 617, writ denied by Soileau v. Matt, 95-0029 (La.2/17/95), 650 So.2d 255, these activities were insufficient to interrupt the thirty-year acquisitive prescription period.
Delacroix presented evidence that its employees trapped and extensively patrolled the property in dispute. However, the Delacroix employees testified that they would not trap in the disputed area where Perez's employees or guests trapped, but would move to trap in other areas. Delacroix employees posted "no trespassing" signs; however, Delacroix' signs were posted along the 40 Arpent Canal and not in the interior of the disputed area. The Delacroix employees agreed that they patrolled along the 40 Arpent Canal but would look over onto the disputed property. If they saw Perez's employees or guests, Delacroix's employees would not disturb Perez or his representatives and invitees. Although the Delacroix's employees did not bother Perez's employees or guests based on instructions that Perez had permission to be there, their lack of effort in ever questioning Perez's actions worked against them where Perez is claiming to be an adverse possessor.
Acts of simple tolerance by defendants preclude a claim of adverse possession. Armstrong v. Armstrong, 493 So.2d 253, 259 (La.App. 3 Cir.1986), writ denied, 496 So.2d 353 (La.1986). In that case, the appellate court found that there were never any acts by the plaintiffs that would bring home to Douglas and his children that they intended to take this property for themselves. Id., 493 So.2d at 258. In the present case, Perez did more than just go on the land. Perez engaged in various overt activities. He told Delacroix's employee, Kenneth Miller, that Miller did not have Perez's permission to be on the disputed property. Perez created the crawfish pond with roads and levee that were partially on the disputed property. There was evidence that Delacroix disapproved of the crawfish pond. Perez's actions were sufficient to bring home to Delacroix that Perez intended to take the property for himself.
General knowledge that the defendant had permission to use the land, without more, was insufficient to establish that the defendant was a precarious possessor in William T. Burton Industries v. McDonald, 346 So.2d 1333 (La.App. 3 Cir. 1997). In that case, it was general office knowledge that the defendant was possessing the disputed property with permission of the company's president. There was no written permission. The plaintiff/record owner conceded, however, that the property was never leased or rented to the defendant, that no written permission was ever given authorizing the defendant to possess the property, that the witness never heard anyone give the defendant verbal permission to do so, and that defendant never asked anyone for permission to use the land. The defendant was not a precarious possessor, and he acquired the property by thirty years acquisitive prescription.
In the present case Delacroix did not prove by a preponderance of the evidence that Perez sought or had Delacroix's permission to use the disputed land. Perez was not a precarious possessor. Perez's possession was open and public. Perez used the property according to its nature, erecting structures to prevent access. Perez's use of the property included cattle and goat grazing as well as duck and deer hunting activities with the erection of blinds and trenasses. Perez fished for crawfish and used pumps to manipulate water levels. Perez's employees did work *878 on the disputed land including dozer work and bush hogging. In 1962 Perez erected gates on two canals which provided access to the disputed property. Perez placed "no trespassing" signs on the disputed property. Perez also built and maintained roads. He built a levee around the crawfish ponds, and a road surrounded the crawfish ponds. All these activities were consistent with the nature of the land and were consistent with ownership.
In 1961 Perez ejected Kenneth Miller, who was Delacroix's permittee. Perez told Kenneth Miller that he was on Perez's property and to please get off. Kenneth Miller testified that he informed both the president and head land man of Delacroix of his confrontation with Perez around 1961. No attempts were made by Delacroix to evict Perez from the disputed property or to disturb or interfere with Perez's possession of the disputed land.
A review of the record shows that the trial court had an adequate factual basis for its conclusions. Perez and Stella Lands have been in possession of the disputed tract of land for more than thirty years and have acquired ownership of the property by acquisitive prescription. Perez showed that he acquired the disputed property through acquisitive prescription of thirty years by proving by a preponderance of the evidence that he intended to possess the disputed area as the owner, and that his adverse possession was unequivocal, continuous, uninterrupted, and public.
Accordingly, I would affirm the judgment of the trial court.
*879
 EXHIBIT "A"
 CHALIN O. PEREZ
 ATTORNEY-AT-LAW
 P.O. Box 1382 (504) 682-2467
 BRAITHWAITE, LOUISIANA 70040
June 3, 1993
Mrs. Dorothy L. Benge, President
Delacroix Corporation
206-8 Decatur Street
New Orleans, LA 70130
Dear Dorothy:
 Thank you for your letter of May 7, 1993 and May 26, 1993 and
your expressions of good will therein recited. This letter is in
response thereto.
 STELLA LANDS, INC.
 As I advised you at our meeting of April 28, Stella Lands,
Inc. is a corporation, most of the stock of which is owned by my
older children. These children range in age from 43 years to 32
years and I assure you that I cannot speak for Stella Lands, Inc.
or for them.
 It is my understanding that Delacroix Corporation's concerns
about adverse possession rights relate primarily to the property
in the rear of the Stella Lands, Inc. property. I therefore
Suggest that you contact Mrs. Linda Perez Grimes, 1009 Grant Ave.,
Pascagoula, MS, 39567 who is the current President of Stella Lands,
Inc.
 Your letter of May 26, 1993 misconstrued what I had previously
told you with respect to the ownership of Stella Lands, Inc. and
the statement that "you are unable to discuss the project with your
son". The current president as I have said is Linda Grimes and she
is the person who should be contacted.
 However, I have recently learned that an attempt is being made
by my son, Chalin O. Perez, Jr. together with his partner in a
gambling effort, Harold White, III, (whose office identifies him as
being "with Delacroix Corporation") to gain control of Stella
*880
June 3, 1993
Mrs. Dorothy L. Benge, President
Page -2-
Lands, Inc. I am further advised that further investigation
revealed that Harold White, III is, in fact, H. Hunter White, III,
the son of your Vice President and whom I understand is a
substantial share holder in Delacroix Corporation.
 Your letter of May 26, 1993 assured me that Delacroix is only
interested in establishing a line between our respective properties
and that you would like to do so in a spirit of cooperation.
 I know that neither you nor other shareholders are involved,
but I am sure that you must understand my concern and the need to
delay a response to your letters pending investigation. I request
that you provide me with assurances that neither Delacroix
Corporation nor any of its officers are pursuing the aforementioned
course of action.
 SCARSDALE
 As I previously advised you, I own a portion of scarsdale
Plantation which is immediately adjacent to and up river from the
Stella Lands, Inc. property and extends from the Mississippi River
to the rear boundary which adjoins the Delacroix Corporation
property. This is the property on which is located my crayfish
pond.
 I acknowledge that a portion of the crayfish pond is to the
best of my knowledge on Delacroix corporation property. However,
it was always my understanding that all of the rear (forty arpent
line) up river portion of my crayfish pond, canal, and levee were
on my property. Therefore, I am not prepared to acknowledge that
if, in fact, a line subsequently is determined to be otherwise that
I would acknowledge your ownership in that part of the property.
The area involved would be minimal, but on the other hand the
future relocation of my levees, canals and ditches would be very
incovenient and costly. I appreciate your offer of long term lease
with a minimal rental to satisfy your concern of adverse possession
and am willing to enter into such a lease subject to acceptable
conditions.
 As I explained to you at our meeting, since I did not, at that
time, have sufficient information to determine the location of the
boundary line, I could not make definite assurances to you except
that subject to the above paragraph, it was not my intention to
adversely possess land owned by the Delacroix corporation.
June 3, 1993
Mrs. Dorothy L. Benge, President
Page -3-
 I hope that this letter satisfactorily responds to your
letters of May 7 and May 26, and that we may pursue the necessary
research work to determine the front property owners title and
proper rear line boundaries so that we may eventually determine and
have marked the correct boundary line between that of Delacroix
Corporation and my Scarsdale property.
 Sincerely,
 
 Chalin O. Perez
COP/amc
NOTES
[1] The Civil Code articles on prescription were revised by Act 187 of 1982 effective January 1, 1983. Although the new articles required a precarious possessor to give "actual notice" to the owner that he intends to adversely possess for himself, the official revision comments stated that the new articles do not change the law. Nevertheless, we have applied the less stringent standard of notice required by the old law: the possessor must manifest his intention to possess for himself by overt and unambiguous acts. However, we note that under either standard, the actions of Perez were insufficient to give notice of his adverse possession.