ANDRES BRAUD

VERSUS

KATHY BERNSTEIN AND
MARC BERNSTEIN

       \*       NO. 2023-CA-0332

       \*

           COURT OF APPEAL

       \*

           FOURTH CIRCUIT

       \*

           STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-06279, DIVISION "E"
Honorable Omar Mason, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Tiffany Gautier Chase)

Salvador I. Bivalacqua
Will C. Griffin
GRIFFIN & BIVALACQUA, LLC
650 Poydras Street, Suite 2615
New Orleans, LA 70130

    COUNSEL FOR PLAINTIFF/APPELLANT


Lanny R. Zatzkis
LAW OFFICES OF LANNY R. ZATKIS, LLC
1511 Robert Street
New Orleans, LA 70115

    COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**DECEMBER 20, 2023**

*JCL*

*DLD*

*TGC*

This is a boundary dispute between next-door neighbors. Plaintiff/appellant, Andres Braud ("Braud"), appeals the November 2, 2022 judgment of the district court, which granted an exception of acquisitive prescription in favor of defendants/appellees, Kathy Bernstein and Marc Bernstein (collectively, the "Bernsteins"); fixed the boundary line along the disputed fence between their properties; and dismissed Braud's claims. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On July 14, 2022, Braud filed a Petition for Damages, Temporary Restraining Order, and Injunction, in which he sought to prevent the Bernsteins[1] from replacing the damaged fence between their properties with a new fence. In his petition, Braud alleged that the fence encroached on his property, and he sought an award of damages for trespass and loss of his property. Further, he sought injunctive relief, prayed for a judgment ordering all encroachments removed, and requested that the district court judicially fix the boundary line. The district court

---

[1] Kathy Bernstein is the only record owner of the Bernstein property, but Marc Bernstein resides there with her.

1

granted Braud's request for a temporary restraining order, but the disputed fence (the "2022 Fence") was completed the same day, as it was disputed whether the Bernsteins were served at that time.

On July 26, 2022, the Bernsteins filed an answer, reconventional demand, and exception of thirty-year acquisitive prescription. The Bernsteins argued that a fence was in its present location as early as a 1946 survey, and had remained in that location since at least 1982, according to Joseph Scherer, the United States mail carrier at the Bernstein property from 1982 to 2019.

On September 14, 2022, the district court held a hearing on the preliminary injunction and exception of prescription. On November 2, 2022, the district court rendered judgment, granting the Bernsteins' exception of acquisitive prescription and fixing the boundary line according to the visible bounds established by the 2022 Fence. The district court dismissed with prejudice all of Braud's claims. On November 14, 2022, Braud filed a motion for new trial, which the district court denied on January 10, 2023. This appeal followed.

## LAW AND ANALYSIS

The primary issue on appeal to this Court, is whether the district court erred in finding thirty-year acquisitive prescription in favor of the Bernsteins.

**Standard of Review**

The standard of review of a district court's ruling on a peremptory exception of prescription turns on whether evidence is introduced. *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 17-0413, pp. 7-8 (La. App. 4 Cir. 11/15/17), 231

So.3d 793, 800. Where no evidence is introduced, the exception raises a purely legal question, and the judgment is reviewed *de novo* to determine whether the district court's ruling was legally correct. *Id.* However, as was done here, where evidence is introduced in support and/or in opposition to the exception of prescription, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Id.*, 17-0413, p. 8, 231 So.3d at 800.

Likewise, a district court's decision whether a party has possessed property sufficient to prove thirty-year acquisitive prescription is a factual determination, which is subject to manifest error-clearly wrong standard of review. *St. John Baptist Church of Phoenix v. Thomas*, 08-0687, p. 7 (La. App. 4 Cir. 12/3/08), 1 So.3d 618, 623. The Louisiana Supreme Court has recited the well-settled manifest error-clearly wrong standard of review, as follows:

> In accordance with well-established law, much discretion is left to the judge or jury on determinations of fact. *Guillory v. Lee*, 09-0075, p. 14 (La. 6/26/09) 16 So.3d 1104, 1116; *Wainwright v. Fontenot*, 00-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74.

> > [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

*Guillory*, 09-0075 at p. 14, 16 So.3d at 1116-17 (quoting *Perkins v. Entergy Corp.*, 00-1372 (La. 3/23/01), 782 So.2d 606). An appellate court, in reviewing a [lower court's] factual conclusions, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Kaiser v. Hardin*, 06-2092, pp. 11-12 (La.4/11/07), 953 So.2d 802, 810; *Guillory v. Insurance Co. of North America*, 96-1084, p. 5 (La. 4/8/97), 692 So.2d 1029, 1032. The issue to be resolved on review is not whether the [factfinder] was right or wrong, but whether the [] fact finding conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La. 1973).

Notably, reasonable persons frequently disagree. *Guillory*, 09-0075 at pp. 15-16, 16 So.3d at 1117. However, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell*, 549 So.2d at 844. "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Canter*, 283 So.2d at 724. Simply stated,

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding

> can virtually never be manifestly erroneous
> or clearly wrong.

*Rosell*, 549 So.2d at 844-45 (citations omitted). *Peironnet v. Matador Res. Co.*, 12-2292, pp. 34-35 (La. 6/28/13), 144 So.3d 791, 817-18.

Moreover, where expert testimony is introduced, the district court "is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence." *C.M.J. v. L.M.C.*, 14-1119, pp. 21-22 (La. 10/15/14), 156 So.3d 16, 31 (citing *Green v. K-Mart Corp.*, 03-2495, p. 5 (La. 5/25/04), 874 So.2d 838, 843). A district court "may accept or reject in whole or in part the opinion expressed by an expert" and may even "substitute his/her own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole." *Id.*, 14-1119, p. 22, 156 So.3d at 31. The factfinder's decision to credit the testimony of one witness over another "can virtually never be manifestly erroneous." *Snider v. Louisiana Med. Mut. Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323. "This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony." *Id.*

**Thirty-Year Acquisitive Prescription**

"Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." La. C.C. art. 3446. Ownership of immovables may be acquired through acquisitive prescription of thirty years without the need of just title or possession in good faith. La. C.C. art. 3486. The

5

party asserting acquisitive prescription bears the burden of proving, by a preponderance of evidence, all facts supporting its claim. *St. John Baptist Church of Phoenix*, 08-0687, p. 7, 1 So.3d at 623 (quoting *Phillips v. Fisher*, 93-928, p. 4 (La. App. 3 Cir. 3/2/94), 634 So.2d 1305, 1307); *Delacroix Corp. v. Perez*, 98-2447, p. 3 (La. App. 4 Cir. 11/8/00), 794 So.2d 862, 865. To prove his claim, such party must show his intent to possess as owner and that his possession has been continuous, uninterrupted, peaceable, public, and unequivocal. *Delacroix Corp.*, 98-2447, p. 3, 794 So.2d at 865 (citing La. C.C. arts. 3424, 3476)(other citations omitted). To acquire possession, the party must both "intend to possess as owner" and "take corporeal possession of the thing." La. C.C. art. 3424. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La. C.C. art. 3425.

"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles." La. C.C. art. 794. "If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." *Id.* "One who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title." La. C.C. art. 3426. "In the absence of title, one has possession only of the area he actually possesses." *Id.* "Actual possession must be either inch by inch possession (*pedis possessio*) or possession within enclosures." La. C.C. art. 3426, cmt. (d). "[A]n enclosure is any natural or artificial boundary." *Id.*

6

This Court explained the effect of tacking to the possession of an ancestor in title, within the boundaries of an enclosure, as follows:

> A title holder may acquire more land than his title calls for by possessing property beyond his title for thirty years without interruption and within visible bounds by "tacking" on the possession of his ancestor in title. La. C.C. art. 3442; *Livingston v. Unopened Succession of Dixon*, 589 So.2d 598, 604 (La. App. 2nd Cir. 1991). "Tacking" pursuant to Civil Code Article 794 requires some juridical link, or written instrument which passes to possessor from his ancestor in title. The link or title need not encompass or include the particular property to which the possessor claims prescriptive title. Pursuant to article 794, one may utilize tacking to prescribe beyond title on adjacent property to the extent of visible boundaries. *Brown v. Wood*, 451 So.2d 569, 574 (La. App. 2nd Cir. 1984), *writ denied*, 452 So.2d 1176 (La. 1984).

*Rathborne v. Hale*, 95-1225, pp. 6-7 (La. App. 4 Cir. 1/19/96), 667 So.2d 1197, 1201 (footnote omitted).

Braud raises two arguments in claiming that the Bernsteins failed to meet their burden to prove thirty-year acquisitive prescription. First, Braud argues that the Bernsteins did not establish corporeal possession up to the 2022 Fence. Second, Braud contends that the Bernsteins lacked the requisite intent to possess any portion of the Braud's property as owner. We disagree with both arguments.

The record evidence reflects that a fence, in some form, was present between the properties in 1946 and from 1982 through trial, though the parties disputed the precise location of the fence at these intervals. With respect to the 2022 Fence, the Bernsteins had fence posts installed in May 2022, and the fence boards were completed in July 2022. In his first argument, Braud asserts that, regardless of the placement of any of the earlier fences evidenced in 1946 and 1982, the 2022 Fence

7

encroached further onto Braud's property than any prior fence. Thus, according to this argument, the Bernsteins failed to prove corporeal possession of the entire area claimed under acquisitive prescription. Braud relies on the following evidence at trial. While Braud did not present any live testimony, he introduced into evidence two affidavits by licensed surveyor Louis Hartmann ("Hartmann"), along with five (5) surveys of the properties in dispute performed between 1946 and 2022. These surveys demonstrated variations in measurements of the size of the fence encroachment in the front and rear of the Braud property over this period. Hartmann explained these variations as a prior surveyor's apparently mistaken belief as to the location of the property line in pre-2012 surveys. However, Hartmann further attested, in pertinent part:

10.

The 8/2/2012 survey [] indicates a fence encroaching onto [the Braud property] 0.3.0' in the front and 1.2.0' in the rear.

11.

The 4/22/2022 survey [] indicates a fence encroaching onto [the Braud property] 0.3.0' in the front and 0.9.5' in the rear. The 4/22/2022 survey was prepared pursuant to a request by Andres Braud. In theory these numbers should match the 2012 survey but they do not by 2 & ¼ inches.

12.

Following the 4/22/2022 survey, Mr. Braud asked [the surveyor] to return and update the survey. Upon returning to the property on May 26, 2022, the surveyor found the fence from 4/22/2022 removed with new fence posts. The 5/26/2022 update survey [] indicates fence posts encroaching onto [the Braud property] 1.2.3' in the front and 1.10.6 towards the rear. Based on the

> angle of the post placement, it can be assumed that the encroachment is even greater in the rear of the property. The encroachment is greater in both the front and rear concluding the new fence encroachment is even greater.

Braud insists that Hartmann's affidavits and the May 2022 survey calculations conclusively prove this increased encroachment and are uncontradicted by any other evidence. We cannot agree with Braud's assertion that this evidence is uncontradicted or must be accepted by the trier of fact.

The Bernsteins introduced, and the district court heard and considered, live witness testimony concerning the placement of fences. None of these witnesses testified that any fence moved or shifted in its placement. Kathy Bernstein testified that she owned the property since January 6, 2006, and that a wooden fence was situated in the same location where the 2022 Fence is erected. She further testified that the old fence posts from the fence damaged by Hurricane Ida in 2021 were removed, and new fence posts for the new wooden fence were placed in the same holes in the ground as the old posts. She further confirmed that she intended to replace the fence exactly where it was. Marc Bernstein confirmed in his testimony that the new fence posts were installed in the old post holes. He testified that he instructed Lone Wolf Renovations, LLC, the contractor who installed the 2022 Fence, to replace the fence exactly where it was. The placement of the new fence posts in the old post holes was likewise confirmed by the Affidavit of Lone Wolf Renovations, LLC itself, which Marc Bernstein read into the trial record.

Lisa Pulitzer ("Pulitzer") was a prior owner of the Bernstein property. She testified that she purchased the property on June 7, 2002 from the Succession of

Leon J. Abadie, and the legal description in the act of sale stated that the property had been acquired by Mr. Abadie from Pelican Homestead on September 5, 1963. Pulitzer testified that she sold the property to Gail Perrin Blank, Leslie H. Blank, III and Beau G. Blank on January 20, 2005. The aforementioned acts of sale were admitted into evidence at trial, showing the continuous ancestry of title from Kathy Bernstein's acquisition of the property in 2006 back to 1963.

Pulitzer also testified that when she purchased the property in 2002, there was a chain link fence between the disputed properties, and during her ownership, she had the chain link fence removed and a wood fence installed in the exact same location of the old chain link fence. In fact, she testified at that time they used the same holes from the posts of the chain link fence to put in the posts for the new wooden fence.

Joseph Scherer testified that he was a U.S. mail carrier who walked the route where the Bernstein property is located, five days per week for 37 years from 1982 until he retired in 2019. He recalled the chain link fence being there in 1982, when he first started walking the route, and he recalled Lisa Pulitzer replacing the chain link fence with a wooden fence into the same post holes of the old chain link fence. He further testified that the wooden fence installed by Pulitzer remained in the same location on the property during the time Kathy Bernstein first purchased the property in 2006 until he retired in 2019.

The district court reasoned,[2] based on this testimony, that Kathy Bernstein and her ancestors in title have possessed as owners the property up to and including the immovable property upon which the current fence is located between the Bernstein and Braud properties for more than thirty years in a manner that was continuous, uninterrupted, peaceable, public and unequivocal. The district court was particularly persuaded that some variation of a fence continuously remained in the same location for more than thirty years, and could have reasonably accepted evidence and testimony that the post holes for the fence that existed since at least 1982 are the same post holes for the 2022 Fence.

In sum, the district court based its judgment on the testimony of witnesses concerning the visible boundary of the fence and particularly the fact that the same post holes were utilized over a time period of over thirty years rather than the varying land surveys. The district court could have reasonably found the Hartmann affidavit and the May 2022 survey confusing, contradictory, and inaccurate and could have further disregarded it in favor of the Bernsteins' testimony, as it was permitted to do as finder of fact. *See C.M.J.*, 14-1119, p. 22, 156 So.3d at 31. These determinations, deeming some evidence more persuasive than other evidence, are precisely the province of the factfinder, which are entitled to

---

[2] We recognize that "written reasons for judgment are merely an explication of the [district] court's determinations[;] [t]hey do not alter, amend, or affect the final judgment being appealed." *Wooley v. Lucksinger*, 09-0571, pp. 77-78 (La. 4/1/11), 61 So.3d 507, 572. Acknowledging that "the job of the appellate court [is] to review the district court's judgment, not its reasons for judgment," where the court of appeal obtains those written reasons, it is "entitled to use those reasons to gain insight into the district court's judgment." *Id.*, 09-0571, p. 78, 61 So.3d at 572.

deference under manifest error review. *Snider*, 14-1964, p. 5, 169 So.3d at 323. We see no reason to disturb the district court's factual findings on appeal.

Braud's second argument concerns whether the Bernsteins satisfied their burden to prove intent to possess the disputed property. This argument presents a legal issue, whether the Bernsteins were required to prove that they knew the encroachment existed yet intentionally continued this encroachment. We find no support for this standard in the Civil Code or jurisprudence. The district court noted in its reasons for judgment, that "[a]s long as it is shown that the successive owners intended to possess and possessed the [disputed] property [] within the 'visible bounds' established by the fence continually for the requisite 30 years, the [Bernsteins] have met their burden of proof for acquisitive prescription." We find no error in this determination. Louisiana Civil Code articles 3486 and 3426 require actual uninterrupted possession within an enclosure for thirty years, either personally for themselves or through ancestors. Braud's argument is without merit.

Finally, Braud assigns as error the failure to grant a new trial based on the surveys of the Braud and Bernstein properties performed by Dufrene Surveying & Engineering, Inc. In the judgment on appeal, the district court ordered these surveys performed to memorialize the district court's ruling setting the boundary line between the Braud and Bernstein properties. Braud argues that the district court should now be required to review and analyze data and findings from these surveys, despite having already conducted a hearing and rendered judgment on all witnesses and evidence presented. Braud fails to show how requiring a new trial to

consider the surveys ordered in the existing judgment meet the criteria for a new trial under La. C.C.P. arts. 1972 or 1973.[3] This assignment likewise lacks merit.

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, we affirm the November 2, 2022 judgment of the district court.

**AFFIRMED**

---

[3] Under La. C.C.P. art. 1972:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

La. C.C.P. art. 1973 provides that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."