FREDERICKA HOMBERG WICKER, Judge.
| ¿The plaintiff/appellant, Mr. Eric Car-naggio, appeals the trial court’s judgment awarding the defendant/appellee, Mrs. Marie Cambre, $20,000 in general damages. The judgment also ordered Eric to improve his property to prevent water from overflowing onto Mrs. Cambre’s property. We find no error in the trial court’s ruling. The judgment is affirmed.
Factual and Procedural Background
Mr. Henry Starlone purchased 82.4 acres of land, the Starlone property, from Colonial Sugars Company on May 31, 1947, in the community of Hester, Louisiana, St. James Parish. He later conveyed a portion of the Starlone property to his daughter, Mrs. Cambre, and her husband on January 9, 1963. Mrs. Cambre constructed her homestead on the property *634 that same year. In September of 1963, Mr. Starlone then conveyed a portion of the Starlone property west of Mrs. Cam-bre’s homestead to his other daughter, Mrs. Henrietta Becnel, and her husband. On December 28, 1970, the Becnels conveyed their land to Mr. Camille Carnaggio, Sr., Eric’s grandfather. The Carnaggio property was surrounded on the west, east, and north by the Starlone property (hereinafter referred to as the “Cambre property”)[1] with the situs of Mrs. Cam-bre’s homestead on the east of the | oCarnaggio property. The south end of the Carnaggio and Cambre properties faced the Mississippi River along Belmont Road.
A small swell[2], located on the west of the Carnaggio property, drained into a ditch located on the northern end of the Cambre property — that swell partially drained the Cambre property as well. Two ditches were situated between the Carnaggio and Cambre properties on the west side of Mrs. Cambre’s homestead. One ditch extended approximately 15 feet into the Carnaggio property. The other ditch ran from the river straight back in a northerly direction.
Around 1972, Eric’s grandfather placed a duplex rental unit on the Carnaggio property. Two septic tanks, located in the rear of the duplex, serviced each unit. The septic tank that serviced the apartment on the left of the duplex flowed from the west to the ditch on northeast of the Cambre property. The septic tank which serviced the apartment on the right drained in a northerly direction, straight back to the same ditch.
Mr. Camille Carnaggio, Jr. inherited his father’s one-half community interest in the Carnaggio property on January 8, 2003. Mr. Carnaggio, Jr. subsequently transferred the property to his son, Eric, through an act of donation on December 16, 2004. The duplex remained on the Carnaggio property until sometime in 2005 when Eric had it removed. After Eric removed the duplex, he began building up the Carnaggio property for the construction of his new home. It was during this time period that the present dispute arose between the Carnaggio and Cambre families.
On April 19, 2010, Eric filed a petition for damages and for injunctive relief against Mrs. Cambre. The petition alleged that he had acquired a servitude of passage to drain his sewerage through Mrs. Cambre’s property through thirty years ^acquisitive prescription. The petition further alleged that Mrs. Cambre caused him damage by blocking the drainage ditches on her property. Mrs. Cam-bre answered the petition and filed a re-conventional demand on May 19, 2010. The reconventional demand alleged that Eric covered the drainage ditches on both sides of his property which disrupted the natural flow of the water and caused her substantial flooding.
Mrs. Cambre moved for summary judgment on August 25, 2010. She alleged that Eric did not have a natural servitude of drain for his sewerage and that he did not acquire a servitude of passage by thirty years acquisitive prescription. The trial court issued its ruling on the summary judgment on October 27, 2010. It determined that Eric did not have a natural drainage servitude for sewerage, sewerage effluent or sewerage discharge onto or over Mrs. Cambre’s property. The court, *635 however, denied the motion regarding Mrs. Cambre’s claim that Eric had not acquired a servitude of passage through the use of acquisitive prescription. Neither party sought appellate review of the trial court’s ruling, and the case proceeded to trial.
Mrs. Cambre testified that she has lived on the Cambre property her entire life. She stated that when she built her homestead in 1968, she installed a septic tank system that had a field bed that ran from the north to the east. She stated that the septic tank caved in 2007 and she installed a Modad system on top of it, which also drained in the same place. She stated that the sewerage never drained to the west and that the ditches between her homestead and the Carnaggio property, as well as the ditch on the western side of the Carnaggio property, ran from the river straight back, south to the north, until 1970.
Mrs. Cambre stated that she began to flood when Eric moved the duplex and built up the land to construct his new home. She stated that Eric constructed a |fimetal building over the ditch that extended 15 feet onto his property. The building had three gutters that drained into a pipe that extended 14 inches into her yard. She testified that she repeatedly told Eric about the flooding, but he never took care of it. She then spoke to Eric’s father who had Eric install a small PVC pipe along the fence. Mrs. Cambre stated, however, that due to the size of the pipe and the height of the dirt Eric added, the pipe could not catch all the water and she continued to flood. She then called the parish to complain, and they came out and dug a small trench. Mrs. Cambre stated that her homestead never pooled water before Eric built up the land and constructed his home. She also stated that she did not obstruct the ditches as Eric alleged.
Eric testified that he lived on the Car-naggio property his entire life and that he and his wife moved into the duplex in 2000. He conceded that he constructed a 40 x 75 foot metal building on the property which covered the ditch that extended 15 feet onto his property. He further testified that he added dirt to build up the foundation for his home but stated that he did not build up the entire land. Eric stated that Mrs. Cambre expressed concern about flooding when he added the dirt to his property, but he did not believe she would be affected anymore than she already was. He further added that the water from the gutters on his shed drained into the swell that the parish built until Todd Roussel, Mrs. Cambre’s son-in-law, chopped it up. Eric believed that Mrs. Cambre caused her own flooding when she added dirt along the side of her house and blocked the ditches.
Eric testified that he does not have and has never had a natural drainage problem. He stated that he began experiencing problems with his sewerage when Mrs. Cambre blocked the ditches on the east and west of his property. He stated that before Mrs. Cambre blocked the ditches, the sewerage overflow had continuously drained over thirty years in a northwestern direction through his | ^property to the Cambre property. He added that he did not think he needed to get permission from Mrs. Cambre to drain his sewerage because he had acquired thirty years acquisitive prescription over the northwest section of that property. He further stated that the sewerage never drained to the east.
Mr. Cedric Louque testified that he lived in the west duplex on the Carnaggio property from 1977-1981. He stated that when he lived in the duplex, two septic tanks were located in the rear and that his sewerage initially flowed from the west to *636 the northeast into the ditch in the back. He further stated that the east septic tank drained straight backward to the north. Mr. Louque stated, however, that both tanks plugged in the middle in 1979 and his drain had to be rerouted to the western ditch. He testified that Mrs. Cambre’s husband helped him dig a ditch to the west to allow his sewerage to drain. He further stated that the ditch was not obstructed when he moved from the duplex.
Mr. Frank Rizzuto, another former resident of the Carnaggio duplex, also testified at trial. He stated that there were two septic tanks in the rear of the duplex when he lived there between 1987-1988. On direct examination, he stated that the sewerage from the septic tank went into an open ditch on the west. However, on cross-examination, he stated that he did not recall a ditch on the west. Rather, he stated that the overflow from the septic tank went into a ditch on the east and then went straight back.
Mr. Anthony Boudreaux, an employee of the Carnaggio’s, also testified at trial. He stated that he maintained the ditches on the Carnaggio property for 10-12 years beginning in 1976. He testified that a pipe from the duplex drained into the western ditch on the Carnaggio property and that the Cambres drained into that ditch as well. He stated, however, that there was only one septic tank at the rear of the Carnaggio duplex, not two. He said that although he maintained the Carnaggio 17ditches, he sometimes continued on through to the Cambre property to clear up the ditches there.
Mr. Gilbert Roussel, Mrs. Cambre’s brother-in-law, testified that he has lived on the Cambre property since about 1963 and had never observed any sewerage drain on that property until recently. He testified that Eric blocked the ditch when he built up the land and constructed the shed and house. Finally, he stated that he knew Mr. Boudreaux but never saw him perform any work on the ditches on the Cambre or Carnaggio properties.
Mr. Ozane Gravois, a sugarcane farmer on the Cambre property from the late 1970s until 2006, also testified. He testified that the ditch on the west of the Carnaggio property went from the river straight back into a canal in the back of the Cambre property. He stated that he maintained the portion of the west ditch behind the Carnaggio property and that he never saw Mr. Boudreaux perform any work on the ditches on either the Cambre nor Carnaggio properties. Mr. Gravois further testified that he built a headland and placed two culverts, at Mrs. Cambre’s request, on the Cambre property in 2006. He added that in 2006, the ditch on the west of the Carnaggio property drained through the two culverts and that the ditch was not blocked when he left. Mr. Gravois added, however, that although he provided an affidavit that stated that the ditch on the northwest side of the Carnaggio property drained sewerage runoff, he was unsure whether it was actually sewerage. He stated that he never saw any pipe that could have been categorized as a sewerage runoff pipe run into the ditch. He stated that he was only sure that natural water went into the west ditch.
Mr. Richard Gainey, Sr., a self-employed sewer treatment installer, also testified at the trial. Mr. Gainey stated that he installed a Modad system on the Carnaggio property in 1998. He stated that the sew-, erage drained to the east when | she installed the system. He testified that he specifically remembered that the system drained to the east because Mrs. Cambre had a well on her property, and he was required to place sewerage drainage fifty feet away from wells. He testified that within the first two years of installing the system, his *637 company performed four inspections; and during those inspections, he was never informed that the direction of the drainage flow had changed.
Mr. Clarence Francis, the sanitary manager for St. James Parish, stated that Mrs. Cambre visited his office with a sewerage complaint in December of 2009. In the course of his investigation, he discovered that discharge from Eric’s Modad system, which was permitted in 1998, had drained onto the ground and run over to the Cam-bre property. He testified that Eric informed him that he had been draining on the ground ever since Mrs. Cambre blocked the ditch.
Mr. Jody Chenier, the public works operations director for St. James Parish, also testified at trial. Mr. Chenier stated that Erie contacted his office about five to six months before trial to determine whether any alternative routes existed to drain his sewerage, because Mrs. Cambre had blocked the ditch. He testified that he obtained permission from Mrs. Cambre to unblock the ditch because he was unable to locate any alternate routes for Eric to drain his sewerage.
Ms. Myra Roussel, Mrs. Cambre’s daughter, testified that neither sewerage nor runoff ever pooled onto her mother’s property before 2006. She stated that when Eric finished the trim work on his house, he dug a trench that spewed sewerage onto her mother’s property. She further stated that Eric ran a pipe to the northwest corner of the land but that there was no ditch to catch the drainage. Mrs. Roussel stated that before Eric constructed the shed and built up his property, water never pooled onto her mother’s homestead. She added that her family did | ¡¡not do anything to clog the ditch and stated that the ditch Mr. Chenier came out about was not the same ditch at issue in this case.
At the conclusion of the trial, the court rendered judgment on December 17, 2010, in Mrs. Cambre’s favor, awarding general damages in the amount of $20,000. The judgment also ordered Eric to install all modifications necessary to prevent overflow onto Mrs. Cambre’s property. Eric moved for a new trial. That motion was denied. This appeal follows.
Assignments of Error
Eric assigns the following errors for review:
1. The trial court erred when it determined that he had changed the natural flow of the water;
2. The trial court erred when it failed to recognize the servitude of drain acquired by prescription by the Car-naggio property for natural drainage and sewerage overflow;
3. The trial court erred in not granting a new trial or partial new trial to allow Mr. Chenier to introduce newly discovered evidence;
4. The trial court erred in failing to address the issue of natural drainage and the topographic system of the east bank of St. James Parish;
5. The trial court erred when it failed to apply St. James Parish Code of Ordinances, Streets Sidewalks and Other Places, § 102-92 and order Mrs. Cambre to reopen the ditches; and
6. The trial court erred when it found Mrs. Cambre suffered damages of $20,000.
Discussion
Preliminarily, we note that the issue regarding whether a natural drainage servitude existed for Eric’s sewerage, sewerage effluent or sewerage discharge has [ 1flalready been decided by the trial court in a motion for summary judgment. That *638 decision is the law of the case. See Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81, 83 (La.1973). Therefore, assignment of error number five[3] and assignment of error number two, to the extent that it references sewerage overflow, is not properly before this Court.

First Assignment of Error

In his first assignment of error, Eric contends that the trial court erred in finding that he changed the natural flow of water. In this case, the trial court made a factual determination that Eric did, in fact, change the natural flow of the water by filling in the ditches on the northwest and northeast corners of his property and by installing a manmade pipe in their place.
On appeal, the reviewing court must give great weight to factual conclusions of the trier of fact. Abadie v. Morales, 391 So.2d 974, 976 (La.App. 4 Cir.1980). “Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Id.
La. C.C. art. 656 provides that the owner of the servient estate may not do anything to prevent the flow of water. However, the owner of the dominant estate may not do anything to render the servitude more burdensome. Id. As the ser-vient estate, Mrs. Cambre’s only obligation is to abstain from doing anything on her estate that would prevent the Carnaggio property from exercising the servitude, because the estate situated below is bound to receive the surface waters that naturally flow from an estate situated above unless an act of man creates the flow. La. C.C. arts. 651 and 655.
11 ,The testimony reveals that Mrs. Cam-bre’s homestead never pooled water before 2006. During the trial, Eric testified that Mrs. Cambre expressed concern to him about the possibility of flooding when he began adding dirt to his property. He further stated that he filled in the ditch that the parish built and that he covered the other ditch with his metal shed. Both Eric and Mrs. Cambre testified that Eric installed a pipe that drained the three gutters on his shed. The testimony revealed, however, that the pipe extended 14 inches into Mrs. Cambre’s property and that no ditch existed to catch the water. Nevertheless, Eric maintains that he did not change the natural flow of the water, further arguing that Mrs. Cambre blocked the natural drain when she plugged the ditches. The only evidence, other than Eric’s testimony, presented at trial that suggests that Mrs. Cambre blocked any ditches was Mr. Chenier’s. Mr. Chenier testified that Eric contacted him a few months before trial and told him that Mrs. Cambre had blocked the ditch. After learning this, Mr. Chenier spoke to Mrs. Cambre where he sought and obtained permission to unplug the blocked ditch. Mrs. Roussel testified, however, that the ditch Mr. Chenier unplugged was not one of the ditches at issue in this case.
The evidence in this case supports the trial court’s finding that Eric made the servitude more burdensome and changed the natural flow of the water when he built up his land and filled in the ditches. This assignment of error is without merit.

Second Assignment of Error

In his second assignment of error, Eric contends that the trial court erred *639 when it failed to determine that he had acquired a servitude of drainage over the Cambre property through thirty years acquisitive prescription.
La. C.C. art. 742 provides that “an apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and 112by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith.” In this case, both Eric and Mrs. Cambre possessed just titles to their respective properties. Moreover, Eric has never alleged that he believed that his sewerage drained only on his own property. In fact, he testified that his sewerage has always drained to the northwest through the Cambre property. Because Eric was aware that his sewerage drained on someone else’s property, he can only claim a servitude of passage through the use of thirty years acquisitive prescription.
The burden of proof for acquisitive prescription is by a preponderance of the evidence. Delacroix Corp. v. Perex, 98-2447, p. 3 (La.App. 4 Cir. 11/8/00), 794 So.2d 862, 865, writ denied, 00-3245 (La.1/26/01), 782 So.2d 635; Bradford v. Thomas, 344 So.2d 717 (La.App. 2 Cir.1977), writ denied, 346 So.2d 714 (La.1977). The party alleging acquisitive prescription bears the burden of proving intent to possess as owner and that his possession has been continuous and uninterrupted, peaceable, public and unequivocal. Id. La. C.C. arts. 3424, 3476. Whether a party has possessed property for thirty years without interruption is a factual issue which will not be disturbed on appeal absent a showing of abuse of discretion. Id.
In this case, Eric testified that the sewerage on the Carnaggio property always drained northwest through the Cambre property. Mr. Louque, Mr. Gravois, Mr. Rizzuto, and Mr. Boudreaux testified on Eric’s behalf at the trial. Mr. Louque testified when he lived in the duplex from 1977-1981, the sewerage initially drained to the northeast. He stated, however, that in 1979, he and Mrs. Cambre’s husband rerouted his drain to the ditch on the west. Mr. Rizzuto, who resided in the duplex between 1987-1988, initially testified that the sewerage drained into an open ditch on the west. However, he later recanted on cross | ^examination and stated that the overflow from the septic tank went to a ditch on the east. Mr. Gravois testified that he was only certain that natural water drained into the ditch on the west and was unsure whether the Carnaggio sewerage drained there as well. Finally, Mr. Bou-dreaux testified that he maintained the ditches on the Carnaggio property for approximately ten years, beginning in 1976, and that sewerage drained from the duplex to the west. However, Mr. Gravois and Mr. Roussel, both of whom had been on the Cambre property for at least thirty years, testified that they never saw Mr. Boudreaux maintain ditches on either the Carnaggio or Cambre properties. Mr. Gainey, the man who installed the Carnag-gio’s Modad system in 1998, stated that the system drained to the east. He testified that he specifically remembered that the system drained to the east because he had to be fifty feet away from Mrs. Cam-bre’s well.
In light of the witnesses’ testimonies, this Court finds that Eric did not meet his burden of proof for acquisitive prescription by a preponderance of the evidence. Mr. Rizzuto waivered in his testimony and stated that the sewerage drained both to the west and east. Eric’s other witness, Mr. Gravois, did not specifically remember the sewerage draining to the west. Two of the witnesses contradicted Mr. Boudreaux’s testimony that he maintained the ditches *640 for ten years. And finally, Mr. Gainey testified that in 1998 he specifically remembered that the Modad system flowed to the east. Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Abadie, supra, at 976. The trial court was in the best position to weigh the credibility of the witnesses’ conflicting testimony. It apparently accepted, as true, the testimony that the Carnaggio sewerage did not always flow in a northwesterly direction. We find that the trial court’s ruling was |unot manifestly erroneous. Therefore, this assignment of error is without merit.

Fourth, Assignment of Error

In his fourth assignment of error, Eric contends that the trial court erred when it failed to address the issue of drainage and the topographic system of St. James Parish. Eric’s petition for damages was based upon the allegation that Mrs. Cambre had blocked the ditches and prevented his sewerage from flowing. Eric has never alleged that Mrs. Cambre damaged his estate by preventing the natural flow of water from his estate. In fact, during the trial, Eric testified that he did not have a problem with flooding on his estate. We, therefore, find that the trial court did not err by failing to address the natural drainage and the topographic system of St. James Parish because Eric never complained of a natural drainage problem. This assignment of error is without merit.

Sixth Assignment of Error

In his sixth assignment of error, Eric contends that the trial court erred in awarding damages in the amount of $20,000. The ultimate determination by an appellate court as to whether a judge abused their ‘much discretion’ as a matter of law in awarding damages is a judgment call. Coco v. Winston Indus., Inc., 341 So.2d 332, 335 (La.1976).
In this case, Mrs. Cambre presented the following costs at trial 1) a $1,500 estimate to clean the sewerage Eric discharged onto her property; 2) a $1,500 invoice she paid to have her property re-surveyed when Eric alleged that her boundary markers were on his property; and 3) an $11,523 estimate she received to fix the natural drainage problem Eric created.[4] In addition, Mrs. Cambre testified that this entire situation has caused her extreme stress and anguish because she is constantly in fear that her home will flood.
In Watters v. City of Bastrop, 445 So.2d 73 (La.App. 2 Cir.1984), the appellate court determined that the general damage award of $4,500 per plaintiff was inadequate and increased the award to $7,500 per plaintiff.[5] In Smith v. Cutts, 99-253 (La.App. 3 Cir. 3/15/00), 759 So.2d 851, 860, the court awarded the plaintiffs $50,000 in general damages, $15,000 for loss of use, and $26, 990 for repair. In that case, the Third Circuit held that the servient estate is not required to accept effluent from the dominant estate. Id. at 857. See also Carr v. Oake Tree Apts., 34,539 (La.App. 2 Cir. 5/9/01), 786 So.2d 230, 235.
Before an appellate court can disturb a trial court’s award, the record *641 must clearly reveal that the trier of fact abused its discretion in making its award. Coco, supra, at 335. “Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.” Id. The evidence in the case supports the trial court’s general damage award of $20,000. We additionally find that Eric’s contention that Mrs. Cambre should be apportioned fault for blocking the ditches is without merit. As stated in the first assignment of error, the record supports the trial court’s finding that Eric blocked the ditches, thereby changing the natural flow of the water. Therefore, this assignment of error is without merit.

Third Assignment of Error

Finally, Eric contends that the trial court erred in not granting a new trial or a partial new trial. Eric contends that he was entitled to a new trial pursuant to La. C.C.P. art. 1972 which provides that, “a new trial shall be granted, upon contradictory motion of any party ... when the party has discovered, since the | lts trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.” Eric argues that Mr. Chenier should have been allowed to present evidence of official maps and other parish documents that he was unable to locate prior to trial. This Court finds that the evidence Eric sought to introduce could have been easily obtained before or during the trial. Mr. Chenier testified at the motion for new trial that he received a subpoena prior to trial. He further stated that he was asked for additional documents after trial and that he was able to easily find those documents. Based on Mr. Chenier’s testimony at the motion for new trial, we find that the evidence Eric sought to admit is not newly discovered evidence because it was easily obtainable prior to trial. Therefore, this assignment of error is without merit.
Conclusion
For the foregoing reasons, we conclude that the trial court’s factual finding that Eric blocked the ditches and changed the natural flow of the water is not manifestly erroneous. We also find that the trial court did not err in finding that Eric did not acquire a servitude of passage of thirty years through acquisitive prescription. We additionally find that the general damage award of $20,000 is not excessive and that the trial court did not err in denying the motion for new trial. The judgment appealed from is affirmed.

AFFIRMED

. By the time the suit was filed, Mrs. Cambre owned all the land surrounding the Carnaggio property.

. A swell is the highest part surrounding the ditch.

. We further note that the fifth assignment of error is not properly before the Court because it presents an argument that was not presented during the trial or in the motion for new trial.

. Eric objected to the first and third estimates as inadmissible hearsay. The trial court overruled the objections. We find no error in that ruling.

. In Watters, sewerage drained into the plaintiffs' home 17 times over five years.